William P. O'CONNOR, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 79S00–8704–CR–439.

Supreme Court of Indiana.

Oct. 18, 1988.

Michael B. Troemel, Merritt & Troemel, Lafayette, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

William P. O'Connor was found guilty by a jury of counts I and II, Confinement; count III Attempted Criminal Deviate Conduct; count IV, Criminal Deviate Conduct, and count V, Rape. Prior to sentencing, O'Connor filed a motion for a new trial based on the discovery of new evidence. The motion was denied after a hearing. The court sentenced O'Connor on all counts to a total executed sentence of 24 years. O'Connor directly appeals raising the following issues for our review:

1. sufficiency of the evidence;

2. alleged error in the trial court's not allowing a demonstration requested of the victim;

3. alleged error in the trial court's denial of O'Connor's motion for a new trial.

The facts most favorable to the verdict below show that 18 year old T.C., the victim, attended a party with her boyfriend on January 17, 1986 from 10:00 p.m. until 2–2:30 a.m. She participated in a drinking game called "quarters", in which she drank beer. She left the party with her boyfriend. They proceeded to her parent's home in Lafayette where, after an argument, her boyfriend left her with his car as he walked to his parent's home. T.C. drove to her boyfriend's house and waited for him to arrive. When he did not arrive, she broke seven of his windows with her hands, which resulted in cuts which later required stitches.

T.C. attempted to drive the car back to town. However, she went around a corner

too quickly, hit a mailbox, and landed in a ditch. She drove the car slowly back onto the road and realized one tire was flat. A car pulled up behind her. Appellant O'Connor, the driver, agreed to take her to St. Elizabeth Hospital because her hands were bleeding, so T.C. joined O'Connor in his car. O'Connor drove to the hospital and started to enter the driveway but, after seeing two police cars, he drove by. T.C. asked him to let her out of the car, but instead, O'Connor took her to Digby Park where he attempted to force T.C. into performing oral sex on him. When she refused, he performed oral sex on her and raped her. Throughout the episode T.C. continuously requested he stop. He answered if she did not stop pleading she would get it worse. She said she was afraid he would kill her. T.C. testified she had no choice but to stay with O'Connor during the attack, because she could not get away. After the sexual acts, T.C. left the car and ran to a water plant where she reported the incident. T.C. positively identified O'Connor as her attacker. When O'Connor was arrested, he attempted to flee.

## I

O'Connor claims T.C.'s uncorroborated and confused testimony is insufficient to prove him guilty beyond a reasonable doubt of the crimes charged. As a court of review, we do not judge the credibility of witnesses nor reweigh the evidence. Rather, we look only to that evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact the verdict will not be overturned. *Loyd v. State,* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. In rape cases, we have held that a conviction may be sustained solely on the testimony of the victim. *Roland v. State* (1986), Ind., 501 N.E.2d 1034, 1037. The issue of consent is one for the jury, as it deals with an issue of fact. *Id.*

O'Connor complains T.C.'s testimony is inconsistent concerning the amount she had to drink that night, whether she was drunk,

whether he jerked her head down after seeing the police at the hospital, and whether he had intercourse with her once or twice. O'Connor asks this court to reweigh the evidence and rejudge the credibility of the victim. The jury found T.C.'s testimony regarding the offenses credible and sufficient to convict O'Connor. We will not now reweigh the evidence.

## II

O'Connor complains the trial court abused its discretion in not allowing the defense to stage a demonstration by T.C. to show how the drinking game of quarters was played. The demonstration requested by O'Connor would have shown the difficulty of bouncing a quarter off a hard surface into a shot glass.

Whether a demonstration should be allowed is within the sound discretion of the trial court. *Partlow v. State* (1983), Ind., 453 N.E.2d 259, 271, *cert. denied* (1984), 464 U.S. 1072, 104 S.Ct. 983, 79 L.Ed.2d 219; *Mitchell v. State* (1978), 270 Ind. 4, 6, 382 N.E.2d 932, 933.

Experiments and demonstrations are properly permitted to be conducted during the trial if they will aid the court and jury. The conduct of experiments and demonstrations in the courtroom can however pose peril to the fairness of a trial. In deciding whether to permit one, a court should consider such factors as the ability to make a faithful record of the drama for appeal purposes, the degree of accuracy in the recreation of the actual prior condition, the complexity and duration of the procedure, other available means for proving the same facts, and the risk which the conduct of such a procedure may pose to the fairness of the trial.

*Peterson v. State* (1987), Ind., 514 N.E.2d 265, 270.

O'Connor claims the demonstration would have been helpful to the jury in determining the question of the victim's intoxication immediately preceding the rape. However, the demonstration would not have rendered her intoxication more

probable than it would have been without the demonstration. T.C. was at a party where she drank, therefore it was impossible to recreate the actual prior conditions. The demonstration was to be acted out, thus it would have been kept from the record. The embarrassment to T.C. which would have resulted demonstrates the prejudice to the fairness of the trial. O'Connor's counsel elicited testimony from T.C. detailing the game and her level of intoxication which demonstrated another means used to prove the same facts. O'Connor has failed to show unreasonableness or arbitrariness in the ruling of the trial court. The trial court properly denied the request for the demonstration.

### III

O'Connor claims the trial court erred in failing to grant a new trial based on his allegation of newly discovered evidence. Subsequent to the trial but prior to sentencing the defense counsel learned that Daisy Willis had heard T.C. retract her account of the rape and admit that her conduct was consensual. Prior to hearing on the motion for new trial, Daisy Willis allegedly told defense counsel three separate times that T.C. had retracted her testimony. However, at the hearing on the motion for new trial, Willis recanted her account to defense counsel, allegedly under threat of perjury by local Sheriff Detective Roy Gross. O'Connor asserts Daisy Willis was awaiting her sentencing on an unrelated charge when Gross spoke with her in jail and intimated that her testimony in favor of O'Connor would jeopardize her position at her own sentencing. The State asserts O'Connor is not entitled to a new trial because he attempted to fabricate evidence to show T.C. had recanted the rape allegation. Daisy Willis testified at the hearing that she had lied for O'Connor about the recantation.

■ To determine whether or not newly discovered evidence entitles a defendant to a new trial, the evidence must meet a nine part test:

(1) [T]hat the evidence has been discovered since the trial; (2) that is is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced on a retrial of the case; and (9) that it will probably produce a different result.

*Augustine v. State* (1984), Ind., 461 N.E.2d 101, 104. In determining whether newly discovered evidence would probably produce a different result in a retrial, it must be such as to raise a strong presumption that, in all probability, it would produce a different result upon a re-trial. *Id.* The newly discovered evidence must be material and decisive in character and be such as to raise a strong presumption that it will in all probability result in an opposite conclusion on another trial. *Id.* In the absence of a clear indication that the new evidence would probably effect a change in the results of the previous trial a retrial need not be granted. *Id.* The denial of a motion for a new trial based on newly discovered evidence will be reversed only if the trial court abused its discretion in concluding that a different result upon retrial would not have been possible. *Augustine*, 461 N.E.2d at 105; *Smith v. State* (1983), Ind., 455 N.E. 2d 346, 351; *Harden v. State* (1982), Ind., 441 N.E.2d 215, 219, *cert denied* (1983), 459 U.S. 1149, 103 S.Ct. 794, 74 L.Ed.2d 998. The burden falls on the defendant to show that the newly discovered evidence meets the prerequisite for a new trial. *Augustine*, 461 N.E.2d at 105.

■ Here, testimony at the hearing on O'Connor's motion for a new trial shows that T.C. did not recant her rape allegation and the story Daisy Willis related to O'Connor's attorney was fabricated. Willis admitted she lied to O'Connor's attorney and testified under oath that T.C. told her O'Connor had raped her. Further, in a sworn deposition and at trial, T.C. related the material facts consistently. Under these circumstances, O'Connor has failed to show the evidence meets the prerequisite for a new trial.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and GIVAN, JJ., concur.

DICKSON, J., not participating.