Trevor T. NUNN, Appellant,

v.

STATE of Indiana, Appellee.

No. 48S00-9107-CR-548.

Supreme Court of Indiana.

Oct. 23, 1992.

H. Erskine Cherry, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Trevor T. Nunn (Defendant–Appellant) was found guilty by a jury of murder, a class A felony, *Ind.Code* § 35–42–1–1(1). He received a sentence of 51 years. In this direct appeal, Nunn raises the following issues:

(1) Whether the trial court erred in denying a new trial based upon newly-discovered evidence;

(2) Whether the trial court erred in denying the introduction of impeaching evidence of a State's witness;

(3) Whether there was sufficient evidence to sustain the conviction of murder where death of the victim was not a probable consequence of defendant's acts; and

(4) Whether the trial court erred in giving the State's tendered Instructions No. 4, 5, and 7 over defendant's objections.

### Facts

On June 18, 1990, a group of children were playing in Geater Park in Anderson. Among these children were Amber and Josh Root, the children of Jean Aldridge. The children, while playing near the railroad tracks in the park, began to throw rocks. At one point, the children threw rocks at each other. A rock thrown by Eugenia Menefee struck Amber. After Amber was hit, she ran home to tell her mother. Aldridge went to the park to speak with the child who had thrown the rock at Amber.

Upon arriving at the park, Aldridge, who was upset, inquired about the child. The conversation took place between Aldridge and three people, Nunn, Zran Ashley, and Michelle Pearson, in a park shelter house. Some of the children who had been playing were nearby and heard the conversation. Eugenia Menefee identified herself to Aldridge. Aldridge proceeded to yell and swear at Menefee. Ashley also argued with Aldridge.

At some point, Nunn walked away from the conversation and spoke with the other children. After speaking with the children, Nunn approached Aldridge from behind and, as he passed her, he struck her in the area of her head and neck. Nunn continued walking and left the shelter area.

Aldridge was found a short time later lying on her back near the shelter. Emergency help and the police were called. Aldridge was transported to St. John's Medical Center. When Aldridge arrived at the hospital, she had no pulse or blood pressure and her pupils were fixed. Aldridge was pronounced dead after she did not respond to stimulation attempts.

On June 19, 1990, Michael Allen Clark, M.D., performed an autopsy on Aldridge. Dr. Clark determined the cause of death as a severed vertebral artery in the neck of Aldridge which was caused by blunt force trauma to the neck. This type of injury is unusual and almost instantaneously fatal.

On June 21, 1990, Nunn was charged by information with one count of murder.

### I. Newly–Discovered Evidence

Nunn argues that the trial court erred when it denied his request for a new trial. He asserts that newly-discovered evidence, more specifically that Ashley kicked Aldridge, would have a material effect on the result at a new trial.

In order to obtain a new trial based on newly-discovered evidence, appellant must prove that: (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the

evidence is worthy of credit; (8) it can be produced on a retrial of the case; and (9) it will probably produce a different result. *Bustamante v. State* (1990), Ind., 557 N.E.2d 1313, 1324; *Hughes v. State* (1989), Ind., 546 N.E.2d 1203, 1210. The trial court, in determining whether a piece of evidence would produce a different result upon a new trial, may consider the weight that a reasonable trier of fact would give it and may evaluate the probable impact the evidence would have in a new trial considering the facts and circumstances shown at the original trial. *Fox v. State* (1991), Ind., 568 N.E.2d 1006, 1007. The newly-discovered evidence must raise a strong presumption that in all probability a different result would be achieved in a new trial. *O'Connor v. State* (1988), Ind., 529 N.E.2d 331, 333. Unless the newly-discovered evidence indicates a probable change in the result of the original trial, a new trial need not be granted. *Id.* On appeal, the denial of a motion based on newly-discovered evidence will be reversed only upon a showing that the trial court abused its discretion. *Fox,* 568 N.E.2d at 1007; *O'Connor,* 529 N.E.2d at 333; *Blacknell v. State* (1987), Ind., 502 N.E.2d 899, 902; *Harden v. State* (1982), Ind., 441 N.E.2d 215, 219, *cert. denied* (1983), 459 U.S. 1149, 103 S.Ct. 794, 74 L.Ed.2d 998. The defendant has the burden to show that the newly-discovered evidence meets the standard for a new trial. *O'Connor,* 529 N.E.2d at 333.

Here, Nunn supported his motion to correct error with testimony presented at the sentencing hearing. The evidence consisted of two witnesses, Trina Hopkins and Dee Dee Nunn. Both witnesses were present at the park on the evening of the incident. Hopkins, although not at the shelter house, was approximately ten feet away from it and saw Nunn strike Aldridge. At the sentencing hearing, Hopkins testified that she also saw Ashley kick Aldridge. Dee Dee Nunn, defendant's cousin, although she was in the vicinity of the shelter house, did not witness the incident. At the sentencing hearing, Dee Dee testified that while she was in the parking lot, Pearson approached her and told her that she should go to the shelter house because her cousin had hit a woman. Additionally, Dee Dee testified that Pearson telephoned her later that evening and told her that Ashley kicked Aldridge after Nunn hit Aldridge.

We find that the evidence fails to meet the standards for granting a new trial. Hopkins' testimony lacks credibility because she failed to say anything at the time of the investigation. This is evidenced by the fact that on the day of the incident she told the police she saw nothing. Dee Dee Nunn's testimony concerned alleged statements made by Pearson regarding the incident. The record already contained evidence of these statements so that the testimony of Dee Dee Nunn was merely cumulative. We have not been convinced by Nunn that the new evidence would probably produce a different result in a new trial. We hold that the trial court committed no error in denying Nunn a new trial based on newly-discovered evidence.

## II. Impeachment by Conviction

Nunn argues that it was improper for the trial court to preclude the defense from using evidence of a prior conviction to impeach a State witness, even though there was a pardon for the crime.

This issue, whether a conviction for which a pardon has been granted may be used to impeach the witness, is one of first impression. As part of our decision, we examine what effect a pardon has on the conviction.

This Court in *Kelley v. State* (1933), 204 Ind. 612, 185 N.E. 453, concluded that a pardon relieves the person of the punishment for the crime and obliterates the finding of guilt. The Court determined that the State could not use a prior conviction which had been pardoned to support an habitual offender charge. *Id.,* 204 Ind. at 630–31, 185 N.E. at 460. In explaining the decision, the Court cited a United States Supreme Court decision which states:

A pardon reaches both the punishment prescribed for the offense and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent

as if he had never committed the offense. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching; if granted after conviction, it removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.

*Ex parte Garland* (1866), 71 U.S., 4 Wall. 333, 379, 18 L.Ed. 366, 370, *quoted in Kelley,* 612 Ind. at 625, 185 N.E. at 458.

The Court of Appeals recently examined a similar issue in *State v. Bergman* (1990), Ind.App., 558 N.E.2d 1111. In *Bergman,* the Court of Appeals examined the ability of the court to expunge a conviction after a pardon. The court concluded that in order to "clear defendant's name" and to give effect to the pardon, it was appropriate to expunge the record of the conviction. *Id.* at 1114. The court determined its decision to be consistent with *Kelley.*

■ Additionally, the Federal Rules of Evidence provide only a limited right to use a conviction after a pardon. Federal Rule of Evidence 609(c) provides:

Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted, and that person has not been convicted of a subsequent crime which was punishable by death or imprisonment in excess of one year, or (2) the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence.

As stated in *Kelley,* the purpose of a pardon is to give a person a new start by blocking out the existence of guilt. *Kelley,* 204 Ind. at 625, 185 N.E. at 458. When a pardoned conviction is used to impeach a person, the purpose for granting the pardon may be diminished. The Federal Rule, however, protects the purpose of a pardon by permitting impeachment by a pardoned conviction only in limited circumstances. In doing this, we find that the Federal Rule furthers the purpose of a pardon. Accord-ingly, we adopt the Federal Rule which generally denies impeachment by a conviction after a pardon is granted.

■ The pardon granted in favor of the witness stated that he had led a crime-free life since his release from probation, he had earned the confidence and support from his peers in the community, and that the pardon was requested so that he could become a full-time police officer. This satisfies the requirements of the Federal Rule and thus the rule announced today. We hold that the trial court was correct in refusing to permit impeachment by a pardoned conviction.

### III. Sufficiency of Evidence

Nunn argues that there is insufficient evidence to sustain a murder conviction. The trial court instructed the jury that "knowingly" refers to a state of mind with respect to every material element of the charged crime. Nunn asserts that the State failed to prove that he was aware of a high probability that he was killing when he struck the victim, due to the manner in which Aldridge was struck, and because the nature of the injury was unusual.

■ Our standard of reviewing claims relating to sufficiency of the evidence is well-established. On appeal, we do not weigh the evidence or judge the credibility of witnesses. We consider only that evidence most favorable to the verdict together with all reasonable and logical inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be disturbed. *Banks v. State* (1991), Ind., 567 N.E.2d 1126, 1129. The crime of murder is defined under *Ind. Code* § 35–42–1–1 and states in pertinent part: "A person who knowingly or intentionally kills another human being...." The information charged Nunn with knowingly killing another human being. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." *Ind.Code* § 35–41–2–2(b).

The question here is whether Nunn acted with the requisite intent when he struck Aldridge. An intent to kill sufficient to sustain a murder conviction can be established in several ways. The intent to kill may be inferred from the use of a deadly weapon. *Jones v. State* (1988), Ind., 523 N.E.2d 750, 752; *Bryan v. State* (1983), Ind., 450 N.E.2d 53, 63. Intent may be inferred from the nature of the attack and the circumstances surrounding the crime. *Corbin v. State* (1990), Ind., 563 N.E.2d 86, 88. The duration, brutality, and relative strengths of the defendant and victim may also indicate an intent to kill. *Gibson v. State* (1987), Ind., 515 N.E.2d 492, 496. Additionally, where blows of magnitude are repeated, a jury could conclude that the defendant had an intent to kill. *Horne v. State* (1983), Ind., 445 N.E.2d 976, 979.

The facts of record and the reasonable inferences most favorable to the verdict establish that on June 18, 1990, Jean Aldridge went to Geater Park to find the child who had hit her daughter with a rock. Upon arriving at the park, she spoke with three young adults, one of them being Nunn, in a park shelter and inquired about a girl. The girl who was nearby identified herself to Aldridge. Aldridge yelled and swore at the girl. Ashley spoke to Aldridge. Nunn left the conversation, talked with another child, and then approached Aldridge from behind. As Nunn left the shelter area, he struck Aldridge once hard from behind and continued to walk away. No words were exchanged between Nunn and Aldridge. Medical attention was sought for Aldridge. A short time later, she was pronounced dead.

We believe the facts can only justify a conviction for involuntary manslaughter.

Involuntary manslaughter is defined as the killing of another human being while committing or attempting to commit a battery, *Ind. Code* § 35–42–1–4, and contemplates an incidental killing that occurs during a battery. *Ingram v. State* (1989), Ind., 547 N.E.2d 823, 831. Battery is defined as knowingly or intentionally touching another person in a rude, insolent, or angry manner. *Ind. Code* § 35–42–2–1. Where the killing is accomplished by a touching, as here, involuntary manslaughter may be a lesser included offense of murder. *Ingram*, 547 N.E.2d at 831.

The evidence reveals that Nunn and Aldridge did not exchange words, that Nunn struck Aldridge once with his hands, and that the cause of death, a severed vertebral artery, is an unusual injury. The evidence reveals that Nunn committed a battery and that Aldridge died shortly after the battery. Although under other circumstances, an intent to kill may be inferred from a single blow, we do not believe that it is established here.

On appeal, this Court may order a modification of a conviction judgment to that of a lesser included offense because of an insufficiency of evidence on a particular element of the crime. *Dickens v. State* (1973), 260 Ind. 284, 293, 295 N.E.2d 613, 619; *Lane v. State* (1978), 175 Ind.App. 543, 547, 372 N.E.2d 1223, 1227; Ind. Appellate Rule 15(N).

Therefore, we hold that the evidence was insufficient to sustain a murder conviction and direct that the judgment of the trial court be modified to involuntary manslaughter in conformity with this opinion.

### IV. Instruction

Nunn contends that the trial court erred in the giving of Instruction Nos. 4, 5 and 7 because each instruction is a misrepresentation of the law and together they place unfair and undue emphasis upon the facts of the case. All three instructions deal with the issue of the requisite state of mind to prove murder and the permissible inferences which may be drawn from the fact that the defendant struck the victim. Our resolution of Issue III, above, renders unnecessary a ruling on the propriety of these instructions.

### Conclusion

Accordingly, we remand this case to the trial court with instructions to vacate the judgment and sentence to the offense of murder, to enter judgment upon the lesser included offense of involuntary manslaugh-

**340**

ter, and to impose sentence on the involuntary manslaughter conviction.

SHEPARD, C.J., and DeBRULER and DICKSON, JJ., concur.

GIVAN, J., dissents, with separate opinion.

GIVAN, Justice, dissenting.

I respectfully dissent from that portion of the majority opinion setting aside the murder conviction and ordering judgment entered imposing a sentence for involuntary manslaughter.

The evidence in this case correctly recited by the majority opinion is that appellant approached the victim from the rear while she was speaking with a child and struck her so forcefully that a vertebral artery was severed. The jury was fully and correctly instructed as to what they must find to constitute murder.

Although appellant did not use a weapon and struck but a single blow with his hand, the evidence was sufficient for the jury to conclude that due to the position of the victim, the manner in which she was struck, and the damage resulting therefrom that appellant intended to administer a fatal blow.

It is not a proper function for this Court to invade the province of the jury and draw a different conclusion by weighing the evidence. Whether we would reach a different conclusion from the evidence is beside the point. The question at issue is whether there is sufficient evidence to support the verdict of the jury. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670. I would not second-guess the jury in this case.

I would affirm the trial court in all respects.