Dewayne E. PIERCE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 42S00–9706–CR–353.

Supreme Court of Indiana.

Dec. 15, 1998.

Jerry J. McGaughey, Vincennes, for Appellant.

Jeffrey A. Modisett, Attorney General, Suzann Weber Lupton, Deputy Attorney General, Indianapolis, for Appellee.

SHEPARD, Chief Justice.

A jury found appellant Dewayne Pierce guilty of murder. The trial court sentenced him to sixty-five years. In this direct appeal, Pierce raises two issues:

1. Whether the evidence was sufficient to support the conviction; and

2. Whether the trial court erred by admitting over Pierce's hearsay objection three letters written by the victim removed.

### Facts

Shortly before 6 a.m. on December 6, 1995, Dewayne Pierce entered the Vincennes Police Department. He appeared upset. Pierce told police that he had come home from work and found his girlfriend Dawn Morrison on the floor of the apartment they shared with "blood coming out of her ears." (R. at 327.) Officers and emergency personnel were dispatched to Pierce's apartment, where they found Morrison in a bed covered by blankets.

Morrison had a gunshot wound to her head. A spent bullet was found on the floor immediately beneath where her head rested. Holes in the pillow and mattress showed the bullet's linear path to the floor. Based on the condition of Morrison's body, it appeared to initial investigators that she had been dead for "some period of time." (R. at 371.) An autopsy revealed that Morrison died sometime before 4:30 a.m. on December 6th and that the most probable time of her death was between 11 p.m. and 1 a.m. Her wound indicated that ·the barrel of the gun was placed in direct contact with her head at the time she was shot.

Heather Lewis, a friend of Pierce who lived in Lawrenceville, Illinois, testified that Pierce came to her apartment sometime on the night of the murder and woke her up, most likely after midnight. Lewis thought Pierce appeared "fine", but Pierce told her he did not feel well and asked if he could sleep on the couch for a couple of hours. Lewis agreed and returned to bed. When she awoke at about 5:30 a.m., Pierce was gone.

On December 7, 1995, the Indiana State Police retrieved a Lorcin 9mm pistol from Kelly Lake, located in Lawrenceville near Lewis' home. Pierce had directed the police to the lake and pointed out the specific area in the lake where the pistol could be, and was, found. At trial, the pistol was identified by Janet Peach as the weapon she had sold Pierce less than a month before the murder. The serial numbers found on the handgun matched those found on an empty gun box the police took from Pierce's residence. An expert witness testified that the bullet which killed Dawn Morrison was fired from this pistol.

### Sufficiency of the Evidence

Pierce claims the evidence was insufficient to prove the elements of murder.[1] He argues that the evidence was only circumstantial and that a reasonable juror could not have found the elements of murder beyond a reasonable doubt on the basis of this evidence. He specifically asserts that the facts were insufficient to show that Pierce killed Morrison knowingly.

■ On appeal, we do not reweigh the evidence or judge the credibility of witnesses,

---

1. A person who "knowingly or intentionally kills another human being" commits murder. Ind. Code Ann. § 35–42–1–1(1) (West Supp.1998).

and we consider only the evidence most favorable to the verdict together with all reasonable and logical inferences to be drawn therefrom.[2] *Nunn v. State*, 601 N.E.2d 334 (Ind.1992). If there is substantial evidence of probative value to support the conclusion of the trier of fact, we will not disturb the verdict. *Id.* (citing *Banks v. State*, 567 N.E.2d 1126, 1129 (Ind.1991)). Certainly, a guilty verdict may be based solely upon circumstantial evidence. *Harris v. State*, 425 N.E.2d 112 (Ind.1981). The reviewing court need not determine that circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence, but only that an inference may reasonably be drawn which supports the finding. *Smith v. State*, 468 N.E.2d 512 (Ind.1984).

The circumstantial evidence was sufficient to allow a reasonable jury to infer that Pierce knowingly killed Dawn Morrison.

■ As for proof that Pierce was the killer, it was reasonable to infer that at the time of the murder Pierce had exclusive control over the 9mm Lorcin pistol used to kill Morrison. Pierce purchased the weapon a month before the crime occurred, the box in which the pistol came was found in his apartment, and he showed the police the specific location of the weapon in Kelly Lake after the crime occurred.

■ As for proof that Pierce killed knowingly, an expert witness testified that the Lorcin pistol in question could only be fired by pulling the trigger; thus, other types of mishandling could not have caused the gun to discharge as Pierce claims. Another expert noted that the bullet wound suffered by the victim was a contact wound, a type of injury to the skin which occurs only when the barrel of the gun is actually touching the skin's surface when fired. The same expert also testified that the position of the victim's body and the points where the bullet entered and exited the victim's head made suicide unlikely.

2. Inferences are defined as "deductions or conclusions which with reason and common sense lead the jury to draw from facts which have been

## Admission of the Victim's Letters

The State offered three letters which were discovered by police in Pierce's apartment. The handwriting was authenticated as that of the victim. Pierce objected on hearsay grounds, but the trial court admitted the statements under Indiana Rule of Evidence 803(3), the state of mind exception to the hearsay rule.

■ We review evidentiary rulings for an abuse of discretion. *Yamobi v. State*, 672 N.E.2d 1344 (Ind.1996). We reverse only when "the decision is clearly against the logic and effect of the facts and circumstances." *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997), *reh'g. denied.*

Of the three contested letters, two are directed to "Dewayne." The first letter states:

Dewayne -

Please start talking to me again, I'm sorry that I didn't come back the outher [sic] night and I know you probably think I was doing stuff I wasn't supposed to be doing but all I did was drank [sic] one beer I didn't smoke anything at all. And I don't cheat on my boyfriends I never have [and] never will so now you know what I did [and] didn't do. If you want me to move out, tell me. Your silence hurts me more than anything.

Dawn

(R. at 783.) The second letter has been extensively crossed out, but remains legible. It states in part: "If you want me to move out Just tell me! Please talk to me! I'm sorry I didn't come back the outher [sic] night. Please forgive me if that's why your [sic] mad!" (R. at 785.) The third letter is addressed to "Hillary" and states: "Dewayne's not talking to me ... I like him alot and I can't get into his mind ... [to] find out how he feels about things ... oh well I'm glad I found someone who will be good to me." (R. at 784.)

■ Evidence Rule 803(3) allows for admission of hearsay when the statement is offered to show a declarant's then-existing

established by the evidence in the case." Black's Law Dictionary 778 (6th ed.1990).

state of mind, emotion, sensation, or physical condition. We have recently outlined certain instances where statements to show a victim's state of mind may be admissible. *Ross v. State,* 676 N.E.2d 339, 345 (Ind.1996) (discussing *Taylor v. State,* 659 N.E.2d 535 (Ind. 1995)). Such instances include where the statements are offered: (1) to show the intent of the victim to act in a particular way, (2) to controvert a defendant's evidence when the defendant puts the victim's state of mind at issue, and sometimes (3) to explain a victim's physical injuries.

▆ For ease of analysis, we take the three letters as hearsay.[3] The assertions that Dewayne was "mad" and that he was "not talking" to Dawn are provable and the inferences to be drawn are sufficiently related to the matter to be proven—Dewayne was angry with Dawn—that Pierce's interest in confronting the declarant (Dawn) would be triggered but for a hearsay exception.

▆ The statements fall within the Rule 803(3) exception, however, because they show Dawn was apprehensive about her relationship with Pierce and because they were offered to controvert defense evidence to the effect that he and the victim were getting along well at the time of the murder. Pierce's mother testified that on the night of the murder Dewayne and Dawn were not "fighting or bickering" and that both appeared to be in a good mood. (R. at 800–01.) A substantial portion of the defense's closing argument focused on the lack of conflict between the two. (R. at 836–41.) Under these circumstances, the victim's anxiety regarding her relationship with Pierce was admissible and relevant because it showed that the relationship was not as smooth as represented by

the defense. *See, e.g., Lock v. State,* 567 N.E.2d 1155, 1159–60 (Ind.1991) (evidence showing murder victim and defendant were "having trouble" in their relationship was relevant since status of the relationship "was one of the contested issues at trial").

The trial court did not abuse its discretion in admitting the letters.

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, SELBY and BOEHM, JJ., concur.

---

**3.** For the sake of simplicity, our analysis considers all three letters as admissible under the state of mind exception. Many of the statements in the letters, however, are not hearsay at all.

Only statements which are capable of being proven true or false can constitute hearsay. 13 ROBERT LOWELL MILLER, JR., INDIANA PRACTICE, INDIANA EVIDENCE § 801.304, AT 505 (2ND ED.1995). Accordingly, the hearsay rule does not bar commands, requests, or questions. *Bustamante v. State,* 557 N.E.2d 1313, 1316 (Ind.1990). The statements in the two letters addressed to "Dewayne" are simply not hearsay. The portions of these letters which are requests for forgiveness, including the

entirety of the second letter, are not hearsay because they are incapable of being proven true or false. The remaining statements within the first letter to Dewayne such as "I'm sorry that I didn't come back the outher [sic] night", "I don't cheat on my boyfriends", and "Your silence hurts me more than anything" are capable of being true or false, but were not offered to prove the matter asserted. They were instead offered to show that a conflict existed in the relationship between Dawn and Dewayne. Accordingly, these statements are also not hearsay and are not barred by Rule 802.