**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 09 2013, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**THOMAS P. KELLER**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANDREW WRIGHT, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1212-CR-522 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Roland W. Chamblee, Jr., Judge
Cause No. 71D08-1204-MR-7

**August 9, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Andrew Wright, Jr., appeals his conviction for the murder of Michael Mumford. An autopsy of Mumford's body revealed his cause of death to be multiple blunt force injuries of the head with multiple sharp force injuries. Wright confessed to striking Mumford repeatedly in the head and face but argues that Appellee-Plaintiff the State of Indiana failed to prove that he inflicted the sharp force injuries found on Mumford's body. Because the forensic pathologist testified that Mumford's blunt force injuries of the head were the primary cause of his death, with the sharp force injuries being secondary, we conclude that the State was not required to prove that Wright inflicted the latter. Wright also argues that the State presented insufficient evidence from which the jury could find that he intended to kill Mumford by beating him. We conclude that the jury could infer such intent from the severe and repetitive nature of the beating Wright inflicted. The judgment of the trial court is affirmed.

**FACTS AND PROCEDURAL HISTORY**

At approximately midnight on March 30, 2012, the South Bend Police Department received a telephone call alerting them to the presence of a body inside the apartment of Patricia James. Officers were dispatched to James's apartment where, after knocking on the door for ten minutes with no response, they observed Wright, James's nephew, exiting through the apartment's rear door. The officers approached Wright and told him they had received a tip about the presence of a dead body inside the home. Wright replied that James was safe in the apartment and that there was no dead body inside. After further knocking, James emerged from the apartment and also denied the existence of a dead body inside the home. James, however, refused to allow the officers to enter.

2

Shortly thereafter, James's son Willie Sauls arrived at the apartment and told the officers that James had called him about the presence of a dead body inside. The officers eventually gained entry into the apartment, where they found Mumford's body under a blanket on the living room floor. Blood covered Mumford's head and face as well as the floor and nearby wall and furniture. Two knives and a spatula blade found near the body were also covered in blood.

During the investigation, Wright's mother contacted police and reported that, on the evening in question, Wright came to her home with blood-covered sweatpants and shoes. Wright informed her that he had just come from James's apartment but that he had not done anything wrong. Wright stayed at his mother's home for several hours, during which he cleaned his shoes and left his bloody sweatpants in the basement to be washed. Wright then left, telling his mother that he was going back to James's apartment. Police recovered Wright's bloody sweatpants and his shoes from his mother's home.

Wright was arrested, taken to the homicide office, advised of his *Miranda*[1] rights, and interviewed by police. After being confronted with his bloody sweatpants, Wright confessed to striking Mumford with his fists seven or eight times in the head and face. Wright explained that Mumford collapsed to the floor and lay motionless, but that he heard Mumford snore and figured he was "okay." Tr. p. 168. An autopsy of Mumford's body revealed multiple blunt force injuries to his head, which caused bleeding around the brain and fractures of the nose, skull, and neck. The autopsy also showed numerous

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

sharp force injuries to various parts of Mumford's body, including a deep stab wound to the abdomen. The forensic pathologist who performed the autopsy determined Mumford's cause of death to be "multiple blunt force injuries of the head with multiple sharp force injuries." Tr. p. 229.

The State charged Wright with murder, and a jury trial was held on October 8 and 9, 2012. At trial, the forensic pathologist who performed Mumford's autopsy testified that, "theoretically," Mumford's sharp force injuries alone could have caused his death. Tr. p. 228. But in this case, he explained, Mumford's blunt force injuries were the primary cause, and his sharp force injuries were secondary. Ultimately, the jury found Wright guilty as charged, and the trial court sentenced him to sixty years of incarceration with five years suspended to probation.

## DISCUSSION AND DECISION

Wright argues that the State presented insufficient evidence to support his murder conviction. When reviewing the sufficiency of evidence to support a conviction, we consider only the evidence and inferences favorable to the verdict. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). We do not reweigh the evidence nor do we judge the credibility of the witnesses. *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000). If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002).

Wright claims that the State failed to prove that he inflicted the sharp force injuries found on Mumford's body, asserting that both the blunt force and the sharp force injuries contributed to Mumford's death. "It is the rule of homicide law that a defendant is

4

responsible for the death of the decedent if the injuries inflicted contribute either mediately or immediately to the death." *Ewing v. State*, 719 N.E.2d 1221, 1225 (Ind. 1999). Here, although the autopsy revealed that Mumford died from "blunt force injuries of the head with sharp force injuries," Tr. p. 229, the forensic pathologist testified that the blunt force injuries were the primary cause of his death while the sharp force injuries were secondary. Therefore, proof that Wright inflicted the sharp force injuries was not required to convict him of murder.

Wright also claims that the State failed to prove that he knowingly killed Mumford by beating him. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2 (a). To sustain a murder conviction, the evidence must show that the defendant was aware of the high probability that his actions would result in the death of another human being. *Young v. State*, 761 N.E.2d 387, 389 (Ind. 2002). An intent to kill sufficient to sustain a murder conviction can be established in several ways, including by inference from the nature of the attack and the circumstances surrounding the crime as well as the duration, brutality, and relative strengths of the defendant and victim. *Nunn v. State*, 601 N.E.2d 334, 339 (Ind. 1992). "[W]here blows of magnitude are repeated, a jury could conclude that the defendant had an intent to kill." *Id.*

Here, Wright confessed to striking Mumford in the head and face seven or eight times with his fists. The blows rendered Mumford unconscious and resulted in bleeding around his brain and fractures to his nose, skull, and neck. We conclude that the jury could infer the requisite intent from the severe and repetitive nature of the beating Wright

5

inflicted.  *See Williams v. State*, 749 N.E.2d 1139 (Ind. 2001); *Nunn*, 601 N.E.2d at 339; *Shackelford v. State*, 349 N.E.2d 150 (Ind. 1976); *Stice v. State*, 89 N.E.2d 915 (Ind. 1950).

The judgment of the trial court is affirmed.

RILEY, J., and BROWN, J., concur.