## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 12 2016, 9:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joseph P. Hunter
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Bryan Modglin,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 12, 2016

Court of Appeals Case No.
18A02-1512-CR-2113

Appeal from the Delaware Circuit Court

The Honorable John M. Feick, Judge

Trial Court Cause No.
18C04-1309-FA-5

**Altice, Judge.**

**Case Summary**

Bryan Modglin appeals his convictions for class A felony attempted murder, class C felony battery resulting in serious bodily injury, class D felony battery resulting in bodily injury, and class A misdemeanor battery. With respect to the attempted murder conviction, Modglin contends that the State failed to present sufficient evidence that he intended to kill the victim. Modglin also makes a claim, applicable to all of his convictions, that the trial court abused its discretion when it excluded defense evidence regarding prior statements of a witness.

We affirm.

### Facts & Procedural History

Just before 2:00 a.m. on September 22, 2013, a bar fight broke out at Cruisers Bar in Muncie, Indiana. Modglin was one of about fifteen involved in the melee, which was recorded on video. Several individuals called 911 to report the fight. Modglin was eventually escorted out by a bouncer, and he left the bar in his white minivan. It is unclear whether he was accompanied by the friends he came with and whether he was the one driving the van away from the bar. Modglin, however, was clearly intoxicated.

Several officers responded to the scene as Modglin's van was about to pull out of the parking lot. A witness alerted officers that the van contained a suspect. Officer Richard Little, who had just arrived on the scene, then backed out of the lot to pursue the van. After quickly finding the van parked in a nearby residential driveway, Little activated the emergency lights of his marked police

vehicle and informed dispatch that he was exiting his vehicle. Little, in full uniform, approached the driver's side of the van. Modglin, the only occupant, was sitting in the passenger seat slumped back. Little asked Modglin where everyone else had gone, and Modglin replied in a slurred manner, "I don't know what the f*ck you're talking about, Little." *Transcript* at 152. Little, who did not recognize Modglin, asked the question again and received the same loud, curt response.

[5] Little then walked around the front of the van to detain Modglin. He ordered Modglin out of the van and opened the passenger door. As Modglin "slid out" of the van, Little grabbed Modglin's left wrist to take him under control. *Id*. at 170. Modglin then immediately struck Little in the head, knocking Little's glasses off. Modglin continued to repeatedly punch Little about the head and face. Little tried unsuccessfully to get some distance from Modglin during the relentless attack. Little was bloodied, could not open his left eye, and felt himself weakening as backup arrived.

[6] Upon witnessing the attack in progress, Officer Shane Finnegan radioed dispatch and jumped out of his police vehicle. In full police uniform, he made multiple demands for Modglin to get on the ground. Modglin, however, simply turned his attention to Finnegan, took a fighting stance, and stated, "let's go, big guy." *Id*. at 188. He swung at Finnegan but missed, and Finnegan then punched Modglin, knocking him back a step or two. Finnegan dropped his hand to secure Modglin, but Modglin managed to punch Finnegan in the mouth. Finnegan's mouth filled with blood and he became disoriented for a

second or two. Modglin came at Finnegan and grabbed him by the throat with both hands, pushing him backward until Finnegan hit a chain-link fence on the property. Modglin bent Finnegan back over the fence as he squeezed his neck. Finnegan could not breathe and struggled unsuccessfully to get free. As he got dizzy and lightheaded and things started to go black, Finnegan reached for his service weapon and shot Modglin twice in the chest. Modglin fell to the ground. The entire encounter between Modglin and Finnegan took less than thirty seconds.

[7] Other officers arrived on the scene almost immediately. According to the first responding officer, Finnegan was stumbling, gasping for breath, and hunched over. Another officer noted that Finnegan's voice was "impaired and raspy" and that he was staggering and breathing hard. *Id*. at 254. Other officers gave similar accounts of Finnegan's condition immediately after the attack. Both Modglin and Little were taken by ambulance to the hospital due to their serious injuries. Among his injuries, Little sustained an orbital fracture to his left eye and a laceration requiring stitches above that eye.

[8] On September 27, 2013, the State charged Modglin with: Count 1, class A felony attempted murder; Count 2, class C felony battery resulting in serious bodily injury; Count 3, class D felony battery resulting in bodily injury; Count 4 and Count 5, class A misdemeanor battery; and Count 6, class C misdemeanor operating with a schedule I or II controlled substance or its metabolite in the

body.[1]  The State also alleged Modglin to be a habitual offender.  Thereafter, the State added Count 7, Class A misdemeanor operating while intoxicated.  The State later dismissed Counts 5 and 6.

[9]  Modglin's three-day bench trial commenced on September 28, 2015.  The trial court entered judgments of conviction on October 2, 2015, on Counts 1 through 4 and found Modglin to be a habitual offender.  The court found him not guilty on Count 7.  Thereafter, Modglin was sentenced to an aggregate term of eighty-one years in prison.  He now appeals.  Additional facts will be provided below as needed.

## Discussion & Decision

### Sufficiency Claim

[10]  Modglin argues that the State presented insufficient evidence to support his conviction for attempted murder.  More precisely, he contends that the evidence was lacking regarding specific intent to kill Officer Finnegan.  While Modglin acknowledges that intent may be inferred from the nature of the attack and the surrounding circumstances, he notes that the strangulation lasted only about ten seconds, no weapon was involved, and Finnegan was a large man with twelve years on the police force.

---

[1] The alleged victims were Finnegan (Counts 1 and 3), Little (Count 2), and two individuals from the bar fight (Counts 4 and 5).

[11]    Our standard of review for sufficiency of the evidence claims is well settled. We consider only the probative evidence and reasonable inferences supporting the conviction. *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence, and we will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence will be found sufficient if an inference may reasonably be drawn from it to support the conviction. *Id.* at 147.

[12]    A person who knowingly or intentionally kills another human being commits murder. Ind. Code § 35-42-1-1. A person attempts to commit a crime when, acting with the culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward commission of the crime. Ind. Code § 35-41-5-1. Although the culpability requirement for murder includes the lesser standard of knowingly, a conviction of attempted murder requires proof of a specific intent to kill. *Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008).

[13]    Because intent is a mental state, "the trier of fact often must infer its existence from surrounding circumstances when determining whether the requisite intent exists." *Goodner v. State*, 685 N.E.2d 1058, 1062 (Ind. 1997). *See also Long v. State*, 935 N.E.2d 194, 197 (Ind. Ct. App. 2010) (without a confession, intent must be determined from a consideration of the conduct and the natural consequences of the conduct), *trans. denied*. Specific intent to kill can be

established in a number of ways, not just through use of a deadly weapon. *See Nunn v. State*, 601 N.E.2d 334, 339 (Ind. 1992). Intent may be inferred from the nature of the attack and the circumstances surrounding the crime. *Pilarski v. State*, 635 N.E.2d 166, 172 (Ind. 1994); *Nunn*, 601 N.E.2d at 339. Such consideration may include, among other things, the duration of the attack, its brutality, and the relative strengths of the defendant and victim. *Nunn*, 601 N.E.2d at 339. Additionally, where blows of magnitude are repeated, a trier of fact may conclude that the defendant had an intent to kill. *Id*.

[14] The facts favorable to the conviction establish that during Modglin's brutal attack on Officer Little, Officer Finnegan arrived on the scene and Modglin quickly redirected his rage.[2] Finnegan's encounter with Modglin was brief but violent. After forcefully striking Finnegan in the mouth, Modglin wrapped his hands around Finnegan's throat and squeezed so much that Finnegan could not breathe. While strangling him, Modglin backed Finnegan up to a fence and bent him backward, limiting Finnegan's ability to escape Modglin's grip and fight him off.[3] Fearing for his life, Finnegan resorted to the use of deadly force, which finally ended the attack.

---

[2] The trial court observed at sentencing: "I think had not Officer Finnegan [] showed up, Officer Little would not be here today." *Transcript* at 594.

[3] On appeal, Modglin notes Finnegan's large stature. The record, however, establishes that Modglin and Finnegan were "both large men". *Id*. at 219.

[15] The brutality of the attack is evident. Moreover, like use of a deadly weapon, it is reasonable to infer an intent to kill from the act of choking someone, especially where the assailant's grip is ended only upon being shot by the victim. Under the circumstances presented, we conclude that the trial court, as trier of fact, was permitted to make an inference of Modglin's specific intent to kill Finnegan.

## Evidentiary Claim

[16] During trial, Modglin proffered evidence of a prior confrontation between Modglin and Finnegan that took place at Cruisers Bar two weeks before the instant encounter. Modglin's friend, James Nichols, indicated that during a verbal confrontation in the bar's parking lot, Finnegan told Modglin that "[h]e was going to f*ck him up, and that he was going to find him, he was going to bust his a**." *Transcript* at 448. The trial court struck the testimony as irrelevant and treated it as an offer to prove.

[17] On appeal, as below, Modglin asserts that the evidence was admissible under Ind. Evidence Rule 616 for the purpose of attacking Finnegan's credibility with evidence of his bias against Modglin.[4] We cannot agree with Modglin's bald assertion that this evidence was "highly relevant". *Appellant's Brief* at 9.

---

[4] Evid. Rule 616 provides: "Evidence that a witness has a bias, prejudice, or interest for or against any party may be used to attack the credibility of the witness."

[18] Even assuming that the trial court erred in excluding the evidence, we find that any error was harmless. *See Hubbell v. State*, 754 N.E.2d 884, 890 (Ind. 2001) ("Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party"). Immediately prior to Nichols's proffered testimony, another defense witness, Jessica Lemaster, testified regarding the verbal confrontation at Cruisers. She indicated that it involved Modglin, Nichols, Finnegan, and a few others. According to Lemaster, "everybody was kind of yelling and threatening one another". *Transcript* at 443. When the State questioned this evidence as a violation of an order in limine, the trial court indicated that the evidence "didn't mean much" to the court as trier of fact. *Id*.

[19] Indeed, the relevance of the prior confrontation was, at most, negligible. This is not a case where Finnegan sought out Modglin. On the contrary, the evidence establishes that Finnegan responded to a report of a bar fight and then went to back up another officer, whom he found being brutally attacked by Modglin. The aggression was then turned on Finnegan, and ample evidence outside of Finnegan's own testimony indicates that Modglin was strangling Finnegan during the attack. Under the circumstances, we can say with confidence that admission of Nichols's testimony would have had no impact on the trial court's determination of guilt.

[20] Judgment affirmed.

[21] Bailey, J. and Bradford, J. concur.