## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 09 2018, 9:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. O'Connor
O'Connor & Auersch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Richard L. Mays,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 9, 2018<br><br>Court of Appeals Case No.<br>49A02-1705-CR-1142<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Marc T. Rothenberg, Judge<br><br>Trial Court Cause No.<br>49G02-1308-MR-52124 |

**Mathias, Judge.**

[1] Richard Mays ("Mays") was convicted in Marion Superior Court of felony murder and Class A felony robbery.[1] Mays was sentenced to sixty years in the Department of Correction. He now appeals and argues that his sentence is inappropriate in light of the nature of the offense and the character of the offender.

[2] We affirm.

## Facts and Procedural History

[3] On April 8, 2013, Lori McKinney ("Lori") drove to Friendly's Bar in Indianapolis where she met Mays inside. The two stayed in the bar for a short time and then walked a couple blocks to Lori's friend Paul Schafer's ("Schafer") house. Inside Schafer's house, Lori and Mays met up with Zachary Ray ("Ray") where they concocted a plan to get more money for drugs.

[4] Lori, Mays, and Ray decided to head to Colonial Inn "[t]o hit a lick." Tr. Vol. II, p. 19. Meaning, Lori would go inside the bar, flirt with a man, and then lure him outside where Mays and Ray would be waiting to rob him. The first attempt failed, when the man Lori lured out noticed Mays and Ray sitting in the back of Lori's pick-up truck. Lori went back inside the bar where she met Michael Campbell ("Campbell") who bought her a drink. Campbell wanted to leave with Lori and head to a nearby bar, so the two exited the Colonial Inn.

---

[1] The court dismissed the Class A felony robbery conviction because of double jeopardy concerns. Tr. Vol. III, p. 2.

[5]     As Lori and Campbell were walking towards Lori's truck, Mays approached Campbell and punched him in the head. Campbell immediately fell to the pavement, and Ray began kicking him. The two men went through Campbell's pockets, and Ray took his wallet while Mays grabbed his cell phone. Lori, Mays, and Ray got into Lori's truck, and she drove the three of them away from the scene.

[6]     The next day, Lori received several calls from an unknown number. When she eventually answered the phone, she recognized Mays's voice on the line. Mays was calling from Campbell's phone. Lori asked Mays which one of the men hit Campbell, and Mays responded, "They call me 'Knockout' for a reason." Tr. Vol. II, p. 39. Campbell was in the hospital for over thirty days. He never regained consciousness and passed away from his injuries on May 13, 2013.

[7]     On August 9, 2013, Mays was charged with felony murder and Class A felony robbery. After several continuances and delays, Mays's two-day jury trial commenced on April 10, 2017. He was found guilty as charged. At the sentencing hearing on April 28, the trial court dismissed the Class A felony robbery count on double jeopardy concerns and sentenced Mays to sixty years in the Department of Correction.

[8]     Mays now appeals his sentence.

# Discussion and Decision

[9] Mays argues that his sixty-year sentence is inappropriate in light of the nature of the offense and the character of the offender. Specifically, Mays contends that his sentence is inappropriate because it was not foreseeable that a single punch could result in death. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

[10] In conducting our review, "[w]e do not look to determine if the sentence was appropriate; instead we look to make sure the sentence was not inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). Ultimately, our principal role is to leaven the outliers rather than necessarily achieve what is perceived as the correct result. *Id*. at 1225. Mays bears the burden to establish that his sentence is inappropriate. *Grimes v. State*, 84 N.E.3d 635, 645 (Ind. Ct. App. 2017), *trans. denied*.

[11] When considering the nature of the offense, we observe that "the advisory sentence is the starting point the Legislature selected as appropriate for the crime committed." *Pierce v. State*, 949 N.E.2d 349, 352 (Ind. 2011). The advisory sentence for felony murder is fifty-five years, with a sentencing range

of forty-five to sixty-five years. Ind. Code § 35-50-2-3. Thus, Mays's sixty-year sentence is five years more than the advisory.

[12] Mays's primary argument is that his sentence was inappropriate in light of the nature of the offense because Campbell dying as a result of Mays's punch was not a foreseeable result. Mays cites to *Nunn v. State*, 601 N.E.2d 334 (Ind. 1992), and *Maiden v. State*, 477 N.E.2d 275 (Ind. 1985) to support his argument.

[13] In *Nunn*, the defendant punched a female victim in the back of the head as he walked by her. 601 N.E.2d at 336. The victim later died from her injuries, and the defendant was charged with murder. On appeal, our supreme court held that the evidence was insufficient to sustain a murder conviction, and therefore directed the trial court to modify the defendant's conviction to involuntary manslaughter. *Id.* at 339. The court explained, "Although under other circumstances, an intent to kill may be inferred from a single blow, we do not believe that it is established here." *Id.*

[14] In *Maiden*, the defendant punched his four-year-old son in the abdomen. 477 N.E.2d at 276. The child died from his injuries and the defendant was charged with and convicted of voluntary manslaughter. On appeal, the defendant argued that he could not have known that a single blow would be fatal, and therefore the evidence was insufficient to show that he "knowingly" killed his son. *Id.* at 278. Our supreme court disagreed and noted, "we find that a person of reasonable judgment would know that a blow of the severity necessary to lacerate the pancreas would be fatal to small child." *Id.* at 279.

[15] Mays contends that his case is similar to *Nunn* because he could not have envisioned that striking Campbell once would cause his death and distinguished from *Maiden* because Mays hit a grown man and not a child. However, neither *Nunn* nor *Maiden* dealt with a challenge to the length of a sentence nor was either defendant charged with felony murder. Also, as Mays acknowledges, "intent is not germane to his conviction" for felony murder. Appellant's Br. at 12. Because we find neither case persuasive, we turn to the nature of the offense and Mays's character.

[16] Mays was an active participant in the robbery, and he dealt the fatal blow. The trial court noted at sentencing, "I find it pretty deplorable that you're luring people out . . . . [a]nd then jumping them and attempting to rob them for money." Tr. Vol. III, p. 17. We agree. Also, the day after the attack, Mays bragged about striking Campbell when he told Lori, "They call me 'Knockout' for a reason." Tr. Vol. II, p. 39. Therefore, even though it may not have been foreseeable that Mays's striking Campbell once would cause his death, he was not convicted for his intent. And his actions leading up to and during the commission of the crime do not demonstrate that his sentence was inappropriate in light of the nature of the offense.

[17] What is most troubling about this case, however, is the character of the offender. As a juvenile, Mays was arrested eleven times and adjudicated delinquent on three misdemeanors. As an adult, Mays has been arrested thirty-two times, resulting in eleven misdemeanor convictions and five felony convictions. We acknowledge that many of these offenses involved alcohol or

drugs; however, five of Mays's prior convictions were for taking property that did not belong to him, and three were for battery. We find it concerning that these offenses share similarities with the underlying events leading to Campbell's death.

[18] Moreover, Mays's record also contains several probation violations. His probation was revoked in 1996, 1999, twice in 2003, and 2005. Additionally, Mays was on probation when he committed the instant offense. Mays's extensive criminal history and numerous probation violations indicate that leniency in sentencing has not had a deterrent effect. *See Ford v. State*, 718 N.E.2d 1104, 1107 (Ind. 1999). And Mays's repeated criminal behavior and disregard for the law demonstrates his less-than-admirable character and does not aid his inappropriateness argument. *See Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007) (explaining that "although a record of arrests by itself is not evidence of a defendant's criminal history, it is appropriate to consider such a record as a poor reflection on the defendant's character . . . .").

[19] We commend Mays for the programs and classes he has completed while incarcerated, the remorse he has expressed, and his stated intent to rehabilitate himself. However, we cannot conclude that the trial court's decision to impose a sixty-year sentence for Campbell's murder is an "outlier" that should be reversed under our constitutional authority to review and revise sentences. *Caraway v. State*, 977 N.E.2d 469, 473 (Ind. Ct. App. 2012), *trans. denied.*

# Conclusion

[20] Based on the facts and circumstances before us, we conclude that Mays has not met his burden of persuading us that his sixty-year sentence is inappropriate in light of the nature of the offense and the character of the offender. Accordingly, we affirm.

Najam, J., and Barnes, J., concur.