Ronald WILLIAMS, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 49S00–9903–CR–204.

Supreme Court of Indiana.

June 28, 2001.

John Pinnow, Greenwood, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Ronald Williams was convicted of murder for cracking a man's skull with a metal pole. We find the force of the blow itself provided sufficient evidence that the defendant knowingly killed the victim. We also agree with the trial court that a witness's prior drug use and past work as a police informant were not relevant and that the prosecutor's failure to disclose certain police notes until trial did not require reversal in these circumstances.

*Background*

The facts most favorable to the verdict indicate that on May 29, 1998, Matthew McGarvey went with a friend to buy crack cocaine on the near eastside of Indianapolis. McGarvey got out of the vehicle and approached a crowd of people. At the same time, Adair Smith was on the same street buying drugs. She saw McGarvey beaten by Defendant Ronald Williams and several other men. She saw Defendant pick up a black metal pole and hit McGarvey once in the head, knocking him to the ground. The impact was so severe that Smith heard a cracking sound when he was hit. After McGarvey was knocked to

the ground, the group of men continued to beat and kick him. McGarvey was hospitalized for eight days before he died. His skull was fractured and he died as a result of the head injury.

Defendant was convicted of Murder.[1] Defendant also pled guilty to being a habitual offender.[2]

### Discussion

### I

■ Defendant contends that the State's evidence was insufficient to support his conviction for murder. *See* Appellant's Br. at 10. He argues that "[t]he State did not prove beyond a reasonable doubt that Williams was aware of a high probability that he would kill McGarvey by striking him one time in the head with a metal pole." *Id.* at 13.

■ In reviewing a sufficiency of the evidence claim, the Court neither reweighs the evidence nor assesses the credibility of the witnesses. *See Garland v. State,* 719 N.E.2d 1236, 1238 (Ind.1999). We look to the evidence most favorable to the verdict and reasonable inferences drawn therefrom. *See Sanders v. State,* 704 N.E.2d 119, 123 (Ind.1999). We will affirm the conviction if there is probative evidence from which a reasonable jury could have found Defendant guilty beyond a reasonable doubt. *See Brown v. State,* 720 N.E.2d 1157, 1158 (Ind.1999).

■ To convict a defendant of murder, the State must prove that the defendant "knowingly or intentionally" killed the victim. Ind.Code § 35–42–1–1. To "knowingly" kill requires, at a minimum, an awareness on the part of the defendant of a high probability that death will result from his actions. *See Storey v. State,* 552 N.E.2d 477, 483 (Ind.1990). In deciding

whether a defendant was aware of the high probability that his actions would result in the death of a victim, the jury may consider the duration and brutality of a defendant's actions, and the relative strengths and sizes of a defendant and victim. *See Childers v. State,* 719 N.E.2d 1227, 1229 (Ind.1999); *Nunn v. State,* 601 N.E.2d 334, 339 (Ind.1992).

We find that the evidence was sufficient to find Defendant guilty of murder. According to the evidence, Defendant struck McGarvey once with a metal pole. The degree of force was equivalent to a fall from a height greater than ten to twelve feet. The impact caused the victim's brain to swell and a portion of the brain shifted to the left side of the head.

In his defense, Defendant cites *Nunn,* where the Court held that there was insufficient evidence to support a conviction for murder where the defendant struck the victim once with his hands from behind and she died a short time later. *Id.* at 338–39. Defendant claims that this case is similar since the evidence here suggests that Defendant only struck the victim once.

■ In *Nunn,* however, the Court also stated that "an intent to kill may be inferred from a single blow." *Id.* at 339. In *Nunn* we stated, "[the defendant] struck [the victim] once with his hands, and ... the cause of death, a severed vertebral artery, is an unusual injury." *Id.* Here, in contrast to *Nunn,* the State presented evidence of a vicious blow to the head with a hard object. The injury was not uncommon for that kind of impact. A jury could reasonably infer from this evidence that Defendant knowingly killed the victim.

1. Ind.Code § 35–42–1–1 (1993).

2. *Id.* § 35–50–2–8 (Supp.1996).

## II

Defendant contends that "the court abused its discretion in excluding evidence that [a witness] previously worked for the State as a confidential informant while she was using drugs." Appellant's Br. at 15.

At trial, Adair Smith identified Defendant as one of McGarvey's attackers. She testified that she had gone to 21st and LaSalle Streets to buy drugs on May 29, 1998, the night of the attack. There she saw the men beating McGarvey and saw Defendant strike McGarvey with a metal pole, causing McGarvey to fall to the ground. And she saw the other men kick and punch McGarvey when he was down. Smith also testified at trial that she smoked crack and marijuana on May 29 and throughout 1998.

Smith did not go to the police initially. Her boyfriend had agreed to go to speak with the police about a different homicide and she accompanied him. She testified that she was worried that her boyfriend was in trouble. She told Detective Prater that she knew about a beating at 21st and LaSalle and she gave a statement and identified the attackers.

At a pretrial deposition, Smith testified that she had previously worked as a confidential drug informant for the Lawrence Police in return for not filing prostitution charges against her. She worked for them for about two and a half years, starting in 1995. Smith testified that she smoked crack while working as an informant and claimed that her police supervisor knew she was using drugs. The trial court granted the State's motion *in limine* to exclude evidence of Smith's prior drug use. The court, however, allowed defense counsel to ask about her drug use at the time of the crime.

Defendant argues that the court should have allowed evidence of Smith's past drug use and her work as an informant, claiming it "was relevant to evaluating her credibility." Appellant's Br. at 19. Smith did testify that she was afraid that her boyfriend was in trouble, and that she had worked as an informant in the past in order to avoid prostitution charges. Defendant maintains that this information suggests that Smith "would do what was necessary to get the police to not [sic] pursue other criminal charges." Appellant's Br. at 20. Defendant sought to argue that Smith was a biased witness because she "did what she believed was necessary to get [her boyfriend] off the hook by providing information about the instant homicide." *Id.*

 "The trial court has wide latitude in ruling on the admissibility of evidence and in determining its relevancy." *Kremer v. State,* 514 N.E.2d 1068, 1073 (Ind.1987). We review a trial court's ruling as to relevance for an abuse of discretion. *See Anderson v. State,* 718 N.E.2d 1101, 1103 (Ind.1999); *Willsey v. State,* 698 N.E.2d 784, 793 (Ind.1998). And even if the trial court erroneously excludes admissible evidence, we will not reverse a defendant's conviction unless his substantial rights have been affected. *See Fleener v. State,* 656 N.E.2d 1140, 1142 (Ind.1995); *Schwestak v. State,* 674 N.E.2d 962, 965 (Ind.1996).

The trial court stated that Smith's prior drug use and work as an informant was "not related to this case." Evidence is not relevant unless it has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* Ind. Evidence Rule 401; *Jackson v. State,* 712 N.E.2d 986, 988 (Ind.1999).

 We conclude that the trial court did not abuse its discretion by prohibiting testimony of Smith's prior drug use. De-

fendant was allowed to, and did, cross-examine Smith about her drug use on the day of the killing and at the time of the trial. The trial court only prohibited Defendant from asking Smith about her prior drug use. Defendant does not attempt to argue that the prior drug use goes to Smith's character but rather to her credibility. He says that "[i]t is more likely that she lied to her case officers about her continuing drug use." Appellant's Br. at 19. But Defendant did not and does not present any evidence that she lied to her case officers or anyone else about her past drug use. Even had there been evidence that she had lied, it appears that such evidence would have been inadmissible under Evid. R. 608(b) as constituting extrinsic acts used to prove credibility.

■ We also conclude that the trial court did not abuse its discretion by prohibiting the testimony of Smith's work as an informant in the past in exchange for the police dropping charges. Defendant contends that her testimony in this case was similarly motivated—that she testified to get her boyfriend out of trouble. *Id.* at 19–20. Although Smith said in her pretrial deposition that she thought her boyfriend was in trouble, she only referred to the time that she gave her initial statement to the police. Defendant did not and does not cite any evidence showing that Smith's boyfriend was in any danger of being prosecuted or that she remained in fear of him being prosecuted. The trial court permitted Defendant to question Smith about ulterior motives and bias in her testimony; Smith was cross examined about her fear that her boyfriend was in trouble. The trial court also allowed questions pertaining to any incentives she was receiving for testifying. While there may be situations where prior service as a police informant would be relevant to evaluating the credibility of a witness, the con-

nection here is simply too attenuated to find that the trial court abused its discretion.

III

■ Defendant contends that "the court abused its discretion in denying Williams' motion to dismiss when the State had not timely complied with a discovery order." Appellant's Br. at 20.

During the second day of trial, Defendant became aware of evidence that the prosecutor had not disclosed. A State's witness, Detective Mark Prater, had 100 to 150 pages of handwritten notes of which Defendant was not aware even though the prosecutor's office had a copy of the notes.

Defendant had requested production of "all statements, notations, memoranda or reports . . . prepared by any witnesses whom the State of Indiana intends to call during the trial of this cause." Under the Marion Superior Court Division Rule 7(2), the State was required to disclose "[t]he names and last known addresses of persons whom the State intends to call as witnesses, with their relevant written or recorded statements," and "any material or information within its possession that tends to negate the guilt of the accused."

In the State's notices of discovery compliance, the State listed Prater on its witness list, but never disclosed the existence of the notes. The notes revealed that the police department or victims assistance provided money to Smith to stay at a motel one or two nights when her electricity was shut off. Defendant moved for dismissal based on the new information, arguing that evidence that Smith was receiving consideration for her trial testimony was impeachment evidence relevant to the jury's assessment of her credibility. *See* Appellant's Br. at 25. The trial court denied Defendant's motion, finding that Defendant suffered no prejudice.

The State's failure to disclose the notes was a violation of the trial court's discovery order. *See Goodner v. State*, 714 N.E.2d 638, 642–3 (Ind.1999); *Williams v. State*, 714 N.E.2d 644, 649 (Ind.1999). But "trial courts are given wide discretionary latitude in discovery matters and their rulings will be given deference on appeal. Absent clear error and resulting prejudice, the trial court's determination of violations and sanctions will be affirmed." [3] *Id.* (citations omitted). There is no indication that Defendant suffered prejudice by the State's failure to disclose Prater's notes. The notes were produced and Prater was cross-examined about them. Smith was also available to testify about the hotel and any other benefits she received from the State. Under these circumstances, we affirm the trial court's denial of Defendant's motion to dismiss.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.

---

**3.** Although the trial court did not find any misconduct on the part of any of the lawyers, we remain deeply concerned about discovery violations by the State. *Goodner,* 714 N.E.2d at 642 ("We cannot continue to tolerate late inning surprises later justified in the name of harmless error. Continued abuses of this sort may require a prophylactic rule requiring reversal."). This case was tried prior to our decision in *Goodner.*