MASSA, J.,
dissenting.
I agree with the majority’s conclusion that the evidence supported Castillo’s conviction for murder as an accomplice, but dissent because I believe there was also substantial evidence for the jury to conclude Castillo was the principal actor.
As the majority correctly states, a person may be convicted of murder where the evidence shows he or she “was aware of a high probability that his or her actions would result in the death of the victim.” Op. at 465; accord Williams v. State, 749 N.E.2d 1139, 1141 (Ind.2001). But I part ways where it “cannot conclude that any of the defendant’s actions — yelling, spanking, slapping, poking, shoving, pushing, and yanking — would make a person aware, either in isolation or in the aggregate, of a high probability of death from blunt force injury of the head or asphyxiation.” Op. at 465-66.
First, I do not think such a level of precision in formulating a defendant’s intent to kill — that the defendant be aware of the particular manner and means of the fatal blow — is required by our case law. The evidence just had to show that Castillo was aware of a high probability that her actions would result in Jada’s death — not death by hitting her head on a table. And in making this determination, “the jury may consider the duration and brutality of a defendant’s actions, and the relative strengths and sizes of a defendant and victim.” Williams, 749 N.E.2d at 1141. Intent to kill may also be inferred “where blows of magnitude are repeated,” and “from the nature of the attack and the circumstances surrounding the crime.” Nunn v. State, 601 N.E.2d 334, 339 (Ind.1992).
Here, the evidence introduced at trial showed that Castillo brutally abused Jada over the course of a day, including numerous strikes to the face, pushing, and yanking on her hair, some of which occurred while Jada was restrained. The evidence also showed that Castillo sent Tkachik to *472 the gas station to get duct tape and, upon his return, took that duct tape into the bedroom with Jada. Tkachik then testified to hearing several “boom” sounds coming from the room. It was after this ominous incident — at the end of a day of physical abuse — that Castillo and Tkachik put Jada in the car and noticed she was not breathing.
Were Jada an adult, perhaps this level of assault — while still heinous — might not raise an awareness of a high probability of death. But Jada was two years old, and I struggle to believe that even an eighteen-year-old carrying out an attack of this scope was not aware that there was a high probability that it could end in death. There was an enormous disparity in size and strength between Jada and Castillo, and this was a protracted and brutal assault with repeated blows of magnitude characterized by escalating viciousness toward a helpless two-year old child — and because of it, Jada died. I believe this was sufficient to sustain Castillo’s conviction for murder, regardless of Tkachik’s conduct.[1]
As a result, I also disagree with the majority’s decision to revise Castillo’s sentence because it rests upon the conclusion that Castillo “was merely eomplicit in her boyfriend’s conduct but did not actively participate in or plan the killing.” Op. at 467. Even absent the evidence discussed above, Castillo herself says otherwise through her appeal.[2] In fact, this concession is the very basis for her appeal of her sentence: she received a sentence of life without the possibility of parole whereas Tkachik faced a sentencing range between twenty and fifty years. Appellant’s Br. at 11 (“This recognition reveals why the disproportionate sentences renders [sic] Castillo’s life sentence inappropriate.”).
In my view, however, while we may consider the difference between Castillo’s sentence and Tkachik’s sentence, we are under no obligation to do so. Appellate Rule 7(B) requires consideration only of the sentence, the nature of the offense, and the character of the offender. I do not believe this is a case for comparison between co-defendants ’ sentences because Tkachik’s reduced sentencing range came only as a result of his agreement to plead guilty to lesser charges. In exchange for this, the State secured Tkachik’s cooperation and testimony — both of which appear to have been necessary for Castillo’s conviction.
This prosecutorial approach is not surprising, given that the only remaining, living witnesses to the entire course of eon- *473 duct were Tkachik and Castillo. Thus, the only way for the State to prove who did what was to secure one defendant’s testimony against the other, in exchange for a lighter sentence. This Court has just recently noted this technique is sometimes necessary to present “a relatively clear picture of an otherwise-muddy situation.” Cain v. State, 955 N.E.2d 714, 719 (Ind.2011) (affirming a sentence of life without the possibility of parole for one of four defendants tried separately for one murder when the case required the prosecutor to “seek plea agreements in which she sought lesser charges in exchange for the defendant’s testimony.”). Divide and conquer is a fundamental crime-solving strategy when more than one suspect is involved. When one blinks first and gets the benefit of his bargain, it does not render his co-defendant’s fuller punishment disproportionate and should not serve as the basis for appellate revision. Our jurisprudence should not undermine acceptable stationhouse bargaining tactics.
Even taking the majority’s view of culpability, I still believe a sentence of life without parole is not inappropriate on these facts. The jury found the sole charged aggravator — that the victim was under the age of twelve — beyond a reasonable doubt.[3] The jury also found that Castillo proved a number of mitigating factors — including her childhood experience, family situation, and drug use — but still believed the aggravator outweighed the mitigators. I see no reason to disturb this decision under our Rule 7(B) analysis when considering the nature of the offense (a vicious litany of abuse on a defenseless and utterly innocent victim followed by a deliberate, planned attempt to conceal the crime, deny involvement, and deceive law enforcement) and the character of the offender (a drug-abusing teenager with a troubled childhood who exhibited hostility to authority and callous disregard for her victim and was hardly the manipulated accomplice she now claims to be).
Finally, with respect to Castillo’s claim that the State’s commentary during its closing arguments at her sentencing was improper, I concur with the majority’s determination that there was misconduct. It was inappropriate for the prosecutor to imply that the jurors should not compare the aggravating and mitigating factors, or that they should impose a sentence based on anything other than those aggravating and mitigating factors.
That said, I do not believe this misconduct rises to the level of fundamental error. Much of Castillo’s strategy at sentencing appears to have been aimed at creating an impression in the minds of the jurors that she was a product of her broken childhood and the manipulative mind of Tkachik. The State’s response would necessarily have been to try to decrease the weight the jury afforded this impression, and that is how I interpret most of the commentary cited by the majority. While some of it is inappropriate, in my view much of it is directly aimed at diminishing the credibility of Castillo’s mitigating factors. This was not an inappropriate stratagem for the State to employ. Moreover, as the majority says, the correct law was provided in the final instructions, and in the absence of contrary evidence we presume the jury follows those instructions. Duncanson v. State, 509 N.E.2d 182, 186 (Ind.1987).
*474 Had Castillo objected and requested an admonishment, this might be a different question. But the fundamental error exception is not a safe harbor for defendants who -violate the contemporaneous objection rule and is therefore deliberately kept very narrow. Cooper v. State, 854 N.E.2d 881, 885 (Ind.2006). Because I think only a small amount of the prosecutor’s closing argument was inappropriate, I believe that narrow exception is not met here.
Accordingly,'! respectfully dissent.

. Accord Childers v. State, 719 N.E.2d 1227, 1230 (Ind.1999) (finding evidence sufficient to sustain a murder conviction where the three-year-old victim was in the adult defendant's care, a witness heard the defendant spanking the victim and yelling, the defendant admitted putting the victim across his lap and whipping him, and the victim later died of a hema-toma: "Given the disparity in size and strength between the defendant and Wesley, and the number and severity of the wounds indicating the considerable force used in striking Wesley, a reasonable jury could have found, beyond a reasonable doubt, that the defend ant was aware of a high probability that the blows he struck would result in Wesley's death.").

. "Castillo respectfully urges that her role in the death of the child is equal to or lesser than that of Tkachik.” Appellant's Br. at 10 (emphasis added). "Hence, both Castillo and Tlcachik participated in the events leading to the death of J J. and it is very plausible that a detached, neutral appellate tribunal could reasonably conclude that they were equally responsible for the death of J.J.” Appellant’s Br. at 11 (emphasis added). "This rare case features two defendants who are as equally culpable as one could imagine .... Both defendants participated in the same series of acts resulting the death of JJ.” Appellant's Br. at 13 (emphasis added).

. It seems as though the defendant requested that the trial court judge make independent findings with respect to the aggravating and mitigating circumstances, as well as the sentence. I express no view as to the propriety or necessity of this added step, but point out only that the judge independently reached the same conclusion as the jury with respect to Castillo’s sentence.