## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 19 2019, 5:53 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Brian Woodward
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James Hill,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

November 19, 2019

Court of Appeals Case No.
19A-CR-16

Appeal from the Lake Superior Court

The Honorable Salvador Vasquez

Trial Court Cause No.
45G01-1609-MR-4

**Tavitas, Judge.**

## Case Summary

James Hill appeals his conviction and sentence for murder in perpetration of robbery based on several alleged procedural and sentencing errors. We affirm in part, reverse in part, and remand for resentencing.

## Issues

Hill raises several issues for our review:

I.  Whether the admission of a deceased witness' deposition violated Hill's federal and state constitutional rights.

II.  Whether the trial court erred in excluding Hill's proffered evidence and denying Hill's request for an offer of proof.

III.  Whether the trial court erred in denying Hill's motion for mistrial.

IV.  Whether the State improperly solicited opinion evidence regarding Hill's guilt.

V.  Whether the cumulative effect of the alleged errors violated Hill's federal and state constitutional rights.

VI.  Whether Hill was properly sentenced.

## Facts

The pre-trial facts, as stated in Hill's interlocutory appeal, follow:

> In the early morning of November 14, 1980, Hammond Police Officer Larry Pucalik was murdered during an attempted robbery

at the Holiday Inn-Southeast located in Hammond, Indiana. Later that day, Hammond Police Detective Robert Seaman received an anonymous phone call from a person who stated, "Pierre Catlett killed your cop."

* * * * *

On November 18, 1980, police arrested Hill on an unrelated charge. When he was arrested, Hill "made the spontaneous utterance 'I know you guys think I shot that Hammond cop.'"

* * * * *

On June 22, 2012, the State charged Hill, [Larry] Mayes, and Catlett with Officer Pucalik's murder.[1] On March 27, 2014, the charge against Hill was dismissed.

* * * * *

On September 1, 2016, the State again [charged] Hill [ ] [with] murder, murder in perpetration of robbery, and Class A felony attempted robbery.

*Hill v. State,* 92 N.E.3d 1105, 1107-1109 (Ind. Ct. App. 2018), *trans. denied* (citations omitted). Hill filed a motion to dismiss[2] wherein he alleged a due process violation from the State's belated filing of charges. The trial court denied the motion to dismiss, and we affirmed on interlocutory appeal.

---

[1] The charge against Catlett was dismissed because he was serving another sentence; and the charge against Mayes was dismissed after he was deemed incompetent to stand trial.

[2] Hill filed his motion to dismiss on December 2, 2016.

[4] Subsequently, Hill moved to suppress his March 9, 1981, statement to police in which he admitted that he drove the robbery getaway vehicle. At the suppression hearing on May 10, 2018, Raymond Myszak of the Hammond Police Department testified that, on March 9, 1981, Hill notified Myszak's partner—Detective Dennis Williams—that Hill wanted to speak with Williams. Hill, who was incarcerated, met with Myszak and Williams and stated: "I drove the killer car." Motion to Suppress Tr. Vol. II p. 13. When Williams asked what Hill meant, Hill responded: "The [car] when the policeman was killed at the Holiday Inn." *Id.* Myszak testified that, after Hill received his *Miranda* advisement, Hill provided additional details of the crime to Williams and Myszak. The trial court denied Hill's motion to suppress Myszak's and Williams' ensuing report and Hill's admission.[3]

[5] Williams died in 2017. On May 14, 2018, the State moved to: (1) declare Williams "unavailable" as defined in the Indiana Rules of Evidence; and (2) use Williams' video deposition from an unrelated federal civil case at Hill's murder trial. Hill's counsel responded as follows:

> In October[ ] 2010 the defendant (HILL) initiated a civil rights suit in federal court against the City of Hammond and several individual[s including] present and/or former Hammond Police Officers <u>not</u> including Dennis Williams, one of the lead detectives in the instant case. The suit was premised upon HILL's allegation of a wrongful conviction for the offenses of rape, unlawful deviate conduct and robbery. During the

---

[3] Hill does not specifically appeal the trial court's denial of the motion to suppress Hill's admission.

pendency of that civil case, on June 22, 2012, HILL was charged with the offense alleged in this matter in cause 45G01-1206-MR-00006 which was later dismissed by the State on March 27, 2014.

Appellant's App. Vol. III p. 52. At a motion in limine hearing on May 17, 2018, the trial court found Williams was unavailable and determined that: (1) the parties and interests of the parties were similar to those in the instant case; (2) Williams was under oath during his deposition; and (3) Hill's attorney conducted "significant cross-examination" during the deposition regarding Hill's murder charge. Motion in Limine Tr. Vol. II p. 26. The trial court also deemed any issue stemming from Hill's absence from the deposition to be waived by Hill's attorney's failure to object during the deposition.

[6] Hill's jury trial was held from August 27 through 31, 2018. At the outset, the trial court heard argument on the State's motion to quash the subpoena of Thomas Vanes, one of Hill's proffered witnesses. Vanes served as a prosecuting attorney, prosecuted Hill in other charges, and was aware of the murder investigation. The trial court took the State's motion to quash under advisement and deferred its ruling until the issue arose at trial.

[7] The State called several witnesses who testified regarding the events of November 14, 1980, when Officer Pucalik was killed. Donald Smulsk of the Highland Police Department testified that he responded to the murder scene and learned from a witness that two black males were involved in the shooting and that they "fled the scene in an older model blue Chevy." Tr. Vol. IV p. 55.

[8] Keith Foor, who worked at the Lake County Sheriff's Department's crime lab in 1980, testified that he arrived at the Holiday Inn at 3:54 a.m. and observed a blue denim drawstring bag on top of the cash register. Later in the trial, three witnesses testified that they each observed Hill with the same blue bag at different times and places.[4] Investigator Ronald Gennarelli of the City of Hammond Police Department testified that he noticed a scrape mark on the curb and a hubcap by the Holiday Inn's entrance and delivered the hubcap to the crime lab the day following the incident.

[9] Officer Monte Miller from the Hammond Police Department testified that, after the robbery, he saw a car that matched the description of the getaway vehicle at a nearby apartment complex; the ignition was "popped," which can indicate that a vehicle is stolen. Tr. Vol. IV p. 137. When Mike Reilly of the Lake County Police Department processed the 1973 blue Chevrolet Impala, he noticed the vehicle's missing hubcap. Foor later determined that the hubcap from the Holiday Inn was a likely match for the blue Impala.

[10] In the early morning hours on November 14, 1980, while searching the vehicle, an officer found a piece of paper under the passenger seat. Miller testified: "When [the officer] pulled [the paper] out, he had noticed that it was a note from a person that apparently had been kidnapped and left a note in the back

---

[4] Officers could not identify any manufacturer that made the same bag and deemed it to be homemade.

seat." *Id.* at 139. Hill objected and moved for a mistrial on the grounds that the reference to a kidnapping violated a motion in limine order. The trial court denied Hill's motion for mistrial; however, the trial court gave the jury the following limiting instruction regarding Miller's statement about a kidnapping:

> So jury, the last comment by the witness was something that I'm going to ask you to strike and ignore and it should not come into any consideration. It's not part of this case as it's a matter that is immaterial to what we're dealing with here. You are to not consider the last comment by the witness as you move forward with your discussions about this case. You may continue.

Tr. Vol. IV p. 142.[5] Miller also testified that the vehicle's glove box was forced open. Officers inventoried items from the vehicle, including decorative pillows.

[11] The State also called T.W.,[6] who met Hill two days prior to the shooting. T.W. testified as follows: on November 12, 1980, T.W. and a friend hitchhiked from Marion, Illinois, to T.W.'s mother's house in Lake County, Indiana. T.W. and her friend climbed into a blue Impala with Hill and another man. During the night, the blue Impala got a flat tire; Hill told the passengers he would borrow his cousin's car and soon returned with another blue Impala. The passengers got into the second blue Impala, which T.W. recalled had decorative pillows in the back of the vehicle. T.W. did not have a driver's license and carried a piece

---

[5] Both the trial court and Hill's counsel indicated that they did not believe the State intentionally elicited this statement.

[6] The State uses initials to identify T.W. For simplicity, we will do the same.

of paper bearing her identifying information. While T.W. was in the second blue Impala, T.W. put the paper under the front passenger seat. T.W. was subsequently dropped off near her mother's house.

[12] Michael Solan, Jr., of the 1980 Hammond Police Department, testified that three people were involved in the robbery; and that the case was reopened in 2009 after a confidential informant provided new information. Next, Myszak testified as follows regarding his investigation: in 1981, Hill implicated Catlett and Mayes and admitted his own involvement. Hill told Myszak and Williams that he drove Mayes and Catlett to the Holiday Inn; that Mayes and Catlett went into the Holiday Inn while Hill waited outside; and that Hill drove the robbery getaway vehicle. Hill also told Myszak that he believed the vehicle "struck something" as he drove away from the Holiday Inn. *Id.* at 14.

[13] During the jury trial and outside the presence of the jury, Hill renewed his motion to exclude Williams' deposition and placed his objection on the record. Portions of the deposition testimony were read to the jury with several redactions. The deposition testimony revealed that: (1) Williams responded to the Holiday Inn shortly after the robbery; (2) Hill admitted to Williams and Myszak that Hill drove the "killer car that held up the Holiday Inn"; (3) the vehicle Hill drove that evening was found with a missing right front hubcap that matched the hubcap recovered near the Holiday Inn; (4) witnesses identified Hill as the owner of the blue denim bag found at the Holiday Inn; and (5) investigators believed the blue Impala was the robbery getaway car. Tr. Vol. VII p. 17. In his deposition testimony, Williams testified further that he also

obtained photographs of Hill and several of Hill's classmates from Hill's high school; he showed the photographs to T.W. and her friend; and both women identified Hill as the initial driver of the second blue Impala.

[14] After the State rested, Hill sought—over the State's objection—to introduce former prosecuting attorney Vanes' testimony to demonstrate that Vanes: (1) who was familiar with Hill and who worked closely with Williams, did not know, in 1981, that Hill confessed his involvement in Pucalik's death; and (2) could not explain the State's delay in charging Hill. The trial court excluded Vanes' testimony and denied Hill's related request to make an offer of proof.

[15] The jury found Hill not guilty of murder and guilty of murder in the perpetration of robbery and attempted robbery. At Hill's sentencing hearing on October 3, 2018,[7] the trial court identified two mitigating factors in its written order—Hill's lack of criminal history and Hill was seventeen at the time of the offense. In its written order, the trial court identified the following aggravating factors:

> The character of the defendant at the time of the offense was dishonest and manipulative.
>
> The Court finds that given the nature of the offense and the character of the defendant, the sentence imposed is appropriate

---

[7] The trial court entered judgment for murder in the perpetration of robbery but not for attempted robbery.

and proper.  Any reduction or lessor sentence will depreciate the seriousness of [the] crime committed.

Appellant's App. Vol. III p. 165.  The trial court sentenced Hill to forty-seven years in the Department of Correction.

[16]     Hill filed a motion to correct error in which he argued, in part, that the aggravators used by the trial court violated *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), *reh'g denied*.  After a hearing, the trial court denied Hill's motion to correct error.  In its written order, the trial court found:

> The aggravator noted in the Defendant's Motion to Correct Error was in reference to the appropriateness of the sentence imposed and the Court's finding that no lesser sentence was warranted as it would depreciate the seriousness of the crime committed.  Our [S]upreme [C]ourt has held that "it is not error to enhance a sentence based upon the aggravating circumstance that a sentence less than the enhanced term would depreciate the seriousness of the crime committed." *Mathews v. State*, 849 N.E.2d 578, 590 (Ind. 2006).
>
> The second significant aggravator[] used by this Court was the character of the Defendant.  As articulated in *Morgan v. State*, 829 N.E.2d 12, 17 (Ind. 20[0]5):
>
>> "We do not see how the Sixth Amendment is implicated or endangered by permitting judges to use aggravators to enhance sentences so long as the underlying facts supporting the aggravator are found by a jury or admitted by a defendant.  Put another way, Sixth Amendment rights are not implicated when the language of an aggravator is meant to describe the factual circumstances, not to serve as a fact itself."

This Court found that the Defendant's character at the time of the offense was dishonest and manipulative. This determination, both substantial and compelling, is derived from the underlying facts of the case as presented to the jury.

*Id.* at 180-81. Hill now appeals his conviction and sentence.

## Analysis

### I.    *Admission of the Williams Deposition*

Hill argues that the admission of Williams' deposition violated Hill's rights under the Confrontation Clauses set forth in the Sixth Amendment of the United States Constitution and Article 1, Section 13 of the Indiana Constitution. "'The trial court has wide latitude in ruling on the admissibility of evidence in determining its relevancy.'" *Williams v. State,* 749 N.E.2d 1139, 1142 (Ind. 2001) (quoting *Kremer v. State,* 514 N.E.2d 1068, 1073 (Ind. 1987)). "We review a trial court's ruling as to relevance for an abuse of discretion." *Williams,* 749 N.E.2d at 1142. "[E]ven if the trial court erroneously excludes admissible evidence, we will not reverse a defendant's conviction unless his substantial rights have been affected." *Id.* When, however, there is an issue of constitutional law, we review those claims *de novo. Brittain v. State,* 68 N.E.3d 611, 617 (Ind. Ct. App. 2017), *trans. denied.*

Under both the federal and state constitutions, Hill argues the deposition was improperly admitted because the deposition was "limited in focus" to Hill's civil suit against the police department and several officers "seeking re-dress for a totally unrelated arrest and conviction." Appellant's Br. p. 19. According to

Hill, therefore, there was no "motivation to elicit facts related to the current charges for which Hill was convicted." *Id.* at 19-20. Hill argues that, due to the context in which the deposition was taken, Hill's counsel was unable to develop several facts on cross-examination of Williams that he otherwise would have developed. Finally, Hill argues that the reading of Williams' deposition at the trial was not a proper hearsay exception under Indiana Rule of Evidence 804.

[19] The State argues the evidence was properly admitted because Williams was unavailable, and Hill had an opportunity to confront Williams. Moreover, the State argues that Hill was aware, at the time of Williams' deposition, of the charges filed against Hill. Specifically, the charges against Hill were initially filed in June 2012, and Williams' deposition was taken in November 2012. Although the 2012 charges were dropped in 2014, and the State filed new charges against Hill in 2016, the allegations were substantially the same and had not been dismissed at the time of Williams' deposition.

[20] At the outset, we note that we have not been provided with the full copy of the deposition. Our record on appeal only includes the deposition as it was read to the jury. While it appears that the parties and the trial court discussed the entire deposition at several points during the trial and pre-trial motions, the full deposition was not made a part of our record on appeal. In other words, we do not have the same opportunity to review the deposition as did the trial court. Hill, as appellant, had the burden to present us with a complete record to resolve the issues he raises on appeal. *See Ford v. State,* 704 N.E.2d 457, 460-61

(Ind. 1998) ("Appellant bears the burden of presenting a record that is complete with respect to the issues raised on appeal.").

### A. Sixth Amendment

First, we address Hill's argument under the Sixth Amendment. "The Sixth Amendment to the United States Constitution provides that 'in all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *State v. Owings,* 622 N.E.2d 948, 950 (Ind. 1993). "This right of confrontation is made obligatory on the states by the Fourteenth Amendment." *Id.* "General agreement exists that the essential purpose of the Sixth Amendment right of confrontation is to insure that the defendant has the opportunity to cross-examine the witnesses against him." *Id.*

> In *Crawford v. Washington,* the U.S. Supreme Court held that [the Sixth Amendment] prohibits "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." 541 U.S. 36, 53-54, 124 S. Ct. 1354[ ] (2004). Though leaving "testimonial statement" undefined, the Court stated that the label "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." [ ]

*Cardosi v. State,* 128 N.E.3d 1277, 1286 (Ind. 2019) (citations omitted).

Here, it is undisputed that Williams was unavailable during Hill's trial, and deposition testimony is exactly the type of "core" testimonial statement our Supreme Court acknowledged in *Cardosi. See id.* (defining "core" constitutional

testimony as "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial"). The question remains, however, under the Sixth Amendment, whether Hill had the opportunity for prior cross-examination of Williams.

[24] Because we were not provided with the full deposition, we do not know: (1) who questioned Williams;[8] (2) whether there was further discussion regarding the purpose of the deposition—whether for civil or criminal purposes; and (3) the entire context in which the questions were asked. We can only assume, as Hill indicated in response to the State's request to use the deposition, that Hill's civil attorney objected to the nature of the questions during the deposition.

[25] It appears undisputed, however, that Hill's attorney was present at the deposition and questioned Williams. Moreover, according to the portion of the deposition read at trial, it was clear to all parties that Williams' health was failing and that it was vital to preserve Williams' testimony in the civil case. Further, the murder charges against Hill were filed months prior to Williams' deposition. These facts demonstrate that there was significant opportunity for cross-examination. *See Berkman v. State,* 976 N.E.2d 68, 77-78 (Ind. Ct. App. 2012) ("At no point in Barraza's deposition [ ] is there the slightest indication that Berkman was denied the opportunity to attempt to undermine Barraza or

---

[8] There is some indication of which attorneys questioned Williams; however, we again note our review is hampered by not having the full deposition.

his testimony by asking any questions he saw fit. To the extent that Berkman did not do so, it was not because he was denied the opportunity."). Hill was not deprived of his Sixth Amendment rights to cross-examine Williams.

### *B. Indiana Constitution*

Next, we must analyze the additional requirements of the Indiana Constitution to determine whether Hill's constitutional rights were violated by the use of Williams' deposition testimony at Hill's murder trial. Under Article 1, Section 13 of the Indiana Constitution, a criminal defendant is guaranteed certain rights, including that "the accused shall have the right to meet the witnesses face to face." *Owings,* 622 N.E.2d at 950. Our Supreme Court has acknowledged that the rights guaranteed by Article 1, Section 13 of the Indiana Constitution are not "necessarily identical" to those given by the Sixth Amendment. *Id.*

"'The Indiana Constitution recognizes [ ] something unique and important in requiring the face-to-face meeting between the accused and the State's witness as they give their trial testimony.'" *Id.* at 950-51 (quoting *Brady v. State,* 575 N.E.2d 981, 987 (Ind. 1991)). "Nonetheless, neither the Sixth Amendment nor Article 1, Section 13 ha[s] been interpreted literally to guarantee a criminal defendant all rights of confrontation at every trial for every witness. Otherwise, no testimony of any absent witness would ever be admissible at trial." *Id.* at 951. "However, where a defendant has never had the opportunity to cross-examine a witness and meet him face to face, admission of prior testimony at a subsequent proceeding violates the [ ] right of confrontation." *Id.*

Moreover, "[c]riminal defendants generally have no constitutional right to attend depositions." *Id.* This rule "is not without exception[,]" however. *Id.* "For example, admission at trial of a deposition which defendant was not permitted to attend, taken by the State and given by a witness unavailable for trial, results in the defendant never having the opportunity to confront that witness. Such a procedure may violate the defendant's right to confrontation." *Id.* at 952. Because confronting the witnesses against the accused "is an individual privilege relating to procedure at trial," the privilege may be waived. *Id.* "Where there is no showing [ ] that a defendant is unable to attend a deposition and he makes no objection to it proceeding, the defendant waives his right to confrontation even if the witness is unable to testify at trial." *Id.*

Finally, in *Brady,* 575 N.E.2d at 987, our Supreme Court held:

> The right is not absolute. It is secured where the testimony of a witness at a former hearing or trial on the same case is reproduced and admitted, where the defendant either cross-examined such witness or was afforded an opportunity to do so, and the witness cannot be brought to testify at trial again because he has died, become insane, or is permanently or indefinitely absent from the state and is therefore beyond the jurisdiction of the court[ ]. [ ] In such cases, there has been a prior face-to-face meeting with the opportunity to cross-examine the witness before a trier of fact in the same case and a necessity for the reproduction of testimony exists. Such an opportunity for cross-examination in a prior civil case, however, will not suffice. [ ]

Thus, we must determine if Hill's Indiana constitutional rights were violated because: (1) he did not have the opportunity to examine Williams face-to-face; or (2) deposition testimony was improperly used from a prior civil proceeding.

### i.    Face to face requirement

Regarding the face-to-face requirement, there are several unknowns because we do not have the entire deposition; accordingly, Hill has not met his burden on appeal. In its brief, the State suggests that Hill was not present[9] for the deposition and alleges that Hill waived any issue stemming from his absence by his counsel's failure to object. It is likely that Hill was not present, as the trial court, which had the opportunity to review the entire deposition, stated:

> I think we would have a different situation if [counsel] had not only [ ]object[ed] to Mr. Hill not being present at the deposition, but [ ] if he – he maintained that [ ] this is a civil case and all you're doing is asking questions about the criminal case.

> [B]ased on the silence in the record, [ ] no objection voiced by [counsel] in Mr. Hill not being at [ ] the civil deposition, Mr. Hill's presence is, in fact, waived.

Motion in Limine Tr. p. 36. Accordingly, Hill has waived his right to examine Williams face-to-face. Hill has neither presented evidence to discredit the trial

---

[9] We note that, in the State's motion to admit the deposition, the prosecuting attorney represented that, at the time of the deposition, "the defendant was present, as was his criminal attorney. . . ." Appellant's App. Vol. III p. 19.

court's finding of waiver nor provided further context for the deposition. Hill has not demonstrated that his state constitutional rights were violated.

### ii. *Deposition from prior proceeding*

[31] As noted above in *Brady,* the opportunity to come face to face with the witness, as required by the Indiana Constitution, in a "prior civil case . . . will not suffice." *Brady,* 575 N.E.2d at 987. The State argues that the civil deposition was not "prior" because it occurred while criminal charges were pending against Hill. Hill counters that, even so, *Brady* mandates reversal because, in a civil proceeding, "counsel had no reason to develop that testimony as he would have in the context of a [criminal] deposition[.]" Appellant's Reply Br. p. 10.

[32] *Brady* takes the "prior civil deposition" language from our Supreme Court's opinion in *Green v. State*, 184 N.E. 183 (Ind. 1933)*.* In *Green,* the defendant was the president of a savings, loan, and trust company and was indicted for "receiving a deposit, knowing that the company was insolvent, whereby the deposit was lost to the depositor." *Green,* 184 N.E. at 184. Our Supreme Court considered whether

> the trial court erred in permitting the [S]tate to introduce in evidence the record of a civil proceeding wherein the [S]tate of Indiana, on relation of Luther F. Symons, bank commissioner of the [S]tate of Indiana, was petitioner, and Garrett Savings, Loan & Trust Company, was defendant, [ ] and wherein [ ] it was found that such company was in a failing and insolvent condition, and where a receiver was appointed for said company.

*Id.* at 185-86. Our Supreme Court held:

One of the questions for the jury to decide [in the present criminal case] was the solvency or insolvency of the bank, but by the introduction of the records and judgment in the civil action, the question was already decided in that particular case, and we know from common experience that a jury would probably follow the finding, on the question of solvency, as found in the civil action; and this being true the right to cross-examine was taken away from the defendant, and also his constitutional right to meet the witness face to face. . . .

* * * * *

The [ ] introduction of the judgment and records in the receivership proceeding enabled the [S]tate to put the appellant, although shielded by the presumption of innocence and the right to face the witness and cross-examine, upon the defensive as to a vital fact involved in the charge against him by simply producing the record of the receivership proceedings in a [ ] different case.

We hold that it was error to admit the proceedings and judgment of the civil action in evidence.

*Id.* at 187.

[33]     Hill's case is distinguishable from *Green.* Here: (1) the prior deposition occurred in a case in which Hill was also a party; and (2) Williams' testimony did not settle a final issue but, rather, detailed the investigative process, including how the evidence supported Hill's arrest for Pucalik's murder. *See id.* at 187-88 ("[Green] did not institute the proceeding and was not individually a party to the receivership action, and therefore would not be bound by the actions taken [ ] in a civil action when on trial as defendant in a criminal prosecution.").

We also agree with the State that Hill's case is distinguishable from *Brady* and *Green* based on timing. Although the civil case here was filed first in time, Hill's initial murder charge was pending for some time prior to Williams' deposition. Moreover, the parties knew that Williams' health was failing and that the deposition was necessary to preserve his testimony. Although better practice would have been to subpoena and depose Williams under the criminal cause instead of the civil cause, practically all parties had an opportunity to question Williams and were aware of his importance as a witness. Further, several deposition questions focused on the murder.[10] Thus, it appears that, although conducted in a separate civil cause, the deposition here covered aspects of Hill's pending murder charges. The trial court did not violate Hill's right to confront Williams by admitting the "prior civil case" deposition; and we find no violation of Hill's Indiana constitutional rights therefrom. *See Brady,* 575 N.E.2d at 987.

### C. Evidence Rules

Indiana Rule of Evidence 804(b)(1)(B) states that former testimony is not excluded by the hearsay rule if the testimony "is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination."

---

[10] Again, we are limited in our review by the fact that we only have the portion of the deposition read at the trial and are unable to locate the full deposition in the record of the instant case.

Hill appears to focus on the motive requirement. Based on the portion of the deposition read at trial, the deposition was taken to preserve Detective Williams' testimony due to his ill health. Even if, as Hill argues, Hill's attorney stated during the deposition that the parties should not focus on the murder investigation, several questions were asked regarding the murder investigation. Our review under Indiana's Rules of Evidence does not warrant a finding that the trial court abused its discretion in admitting the evidence.

## II. *Offer of Proof and Excluded Evidence*

Hill next argues that the trial court erred by excluding certain evidence and by refusing Hill's related request to make an offer of proof. Again, we review the exclusion of evidence for an abuse of discretion. *See Williams,* 749 N.E.2d at 1142. Generally, a party has a right to make an offer of proof and "'it is reversible error for a trial court to deny a party the opportunity to explain the substance, relevance, and admissibility of excluded evidence with an offer of proof.'" *Harman v. State,* 4 N.E.3d 209, 216 (Ind. Ct. App. 2014) (quoting *Duso v. State,* 866 N.E.2d 321, 324 (Ind. Ct. App. 2007)), *trans. denied.*

Offers of proof "are most beneficial when the trial court must decide whether to exclude proffered testimony. A valid offer to prove must explain: (1) the testimony's substance; (2) the testimony's relevance; and (3) the grounds for admitting the testimony." *Bedolla v. State,* 123 N.E.3d 661, 666-67 (Ind. 2019). While beneficial to the trial court and the parties, offers of proof "are invaluable to reviewing courts." *Id.* at 667.

[39]     Hill sought to introduce former deputy prosecutor Vanes' testimony. The State

moved to quash Vanes' subpoena. At trial, the following colloquy ensued:

> THE COURT:      So the issue would turn on what [ ] you plan
> on eliciting from Mr. Vanes. The motion on the table is that if
> it's information that was provided that was a part of his
> prosecutorial work in the 1980s, that it's subject to privilege.
>
> [HILL'S COUNSEL]:      [ ] First of all, [ ] [Vanes] was a deputy
> prosecuting attorney. Well, in – certainly in 1980, it predates
> that, and was involved in the prosecution of an unrelated matter
> [ ] for the next several years and was aware of the investigation
> regarding this case. [ ][Vanes] was involved with Michael Solan
> in the investigation and was involved in the prosecution of Mr.
> Hill. . . . Michael Solan . . . never disclosed the existence of
> [Hill's] confession of March 9th, 1981, or any other time to Mr.
> Vanes.
>
> Second part was generated yesterday during questioning by Mr.
> Dillon of Captain Solan, I believe late in the direct examination
> of Captain Solan, possibly the redirect, but I think it was the
> direct wherein Mr. Dillon elicited testimony from Captain Solan
> [that], his delay in seeking charges against Mr. Hill,
> notwithstanding the March 9th, 1981, purported confession was
> because of his desire to develop additional evidence on the other
> two suspects. . . . I intend to establish that Mr. Vanes based on
> training and experience is an expert in criminal law and in
> criminal procedure. . . .
>
> * * * * *
>
> [THE STATE]:      Yes. So [defense counsel] said [ ] Vanes
> worked on another case of Mr. Hill's with Mr. Solan. That's not
> relevant. Past prosecutions of Mr. Hill, they are not relevant in

these proceedings. So that – that portion is not relevant, and as far as that Mr. Solan or anybody at the Hammond Police Department [ ] never told Thomas Vanes about this confession, that fact is not in dispute. The prosecution has presented that through several witnesses, that it's our – we never gave anything to the prosecutor. [ ] So for that purpose, the State will ask that his subpoena be quashed on that section. And as far as the other section, [ ] the decision to prosecute [ ] rests solely with the State of Indiana. The [ ] crimes [ ] that we choose to prosecute [are] up to [ ] the discretion of the State.

Tr. Vol. VII pp. 98-100. The trial court granted the State's motion to quash and did not allow Vanes to testify.

[40] Hill's attorney then sought to make an offer of proof regarding Vanes' testimony, which the trial court denied, stating:

Your request is denied. I will not allow you to make the offer of proof through Vanes because he has nothing to offer. [ ] For him to make the offer of proof to simply indicate yes, I did not receive anything from Solan adds nothing to our discussion as I see it and to put him on the stand to indicate what the role of a prosecutor was in the 1980s, and we do believe he was a prosecutor in 1980, and I speculate, without actually knowing, that he was one of the prosecutors involved in this unrelated case that we've been speaking of for quite some time. [ ]

Id. at 102-03. Hill's attorney again requested to make an offer of proof with Vanes' testimony during a break, which the trial court again denied, noting that "[w]hat you've proffered through [Hill's other attorney] is your offer of proof. You don't need live testimony to preserve the record. You've done so by these two points that you want to present through Vanes." Id. at 104.

[41] Hill argues that both the exclusion of the evidence and the denial of the specific method of the offer of proof were error. The State responds that the evidence and offer of proof were properly excluded because: (1) the contact Solan and Vanes had related to a different criminal matter; (2) there was no evidence Vanes had any expertise regarding prosecutorial charging decisions due to the fact he had not prosecuted in many years; and (3) the testimony would include "confidential work product" of the prosecutor's office. Appellee's Br. p. 26. Regardless, the State argues that Hill had a sufficient offer of proof based on the thorough statements by Hill's attorney.

[42] We agree with the State on both counts. Regarding the offer of proof, the trial court did allow Hill to make an offer of proof for the record. Hill's attorney went into significant detail regarding what Vanes would have said during his testimony. The trial court was not required to hear Vanes' live testimony to re-state what Hill's attorney stated. *See Harman,* 4 N.E.3d at 217 ("Based on the record before us, we conclude that the trial court did not deny Harman the opportunity to make an offer to prove. Indeed, the trial court gave Harman the chance to explain the substance, relevance, and admissibility of the proposed evidence."); *see also Heckard v. State,* 118 N.E.3d 823, 829 (Ind. Ct. App. 2019) ("To be clear, the trial court did not deny Heckard the opportunity to present an offer of proof; the trial court denied defense counsel's way of presenting the offer of proof. . . . Enough evidence was presented for our current review, which is the purpose of the offer of proof."), *trans denied.*

[43] We also cannot say the trial court abused its discretion in excluding Vanes' testimony. In the best case scenario, Vanes' testimony would have been that Vanes, who was familiar with Hill due to other unrelated investigations, and knew that the murder investigation was underway, did not know (1) why it took so long for the State to file charges against Hill; and (2) was not aware that Hill confessed to driving the vehicle involved in the robbery. The trial court did not abuse its discretion in excluding this speculative and vague testimony.

[44] The trial court did not abuse its discretion in denying the admission of Vanes' testimony, and the trial court also did not err by denying Hill the opportunity to make an offer of proof with Vanes' live testimony.

### III.  Motion for Mistrial

[45] Hill next argues that a statement by a State's witness warranted a mistrial. "We review a trial court's denial of a mistrial for [an] abuse of discretion because the trial court is in 'the best position to gauge the surrounding circumstances of an event and its impact on the jury.'" *Pittman v. State*, 885 N.E.2d 1246, 1255 (Ind. 2008) (quoting *McManus v. State*, 814 N.E.2d 253, 260 (Ind. 2004), *cert. denied*, 546 U.S. 831, 126 S. Ct. 53 (2005)). "A mistrial is appropriate only when the questioned conduct is 'so prejudicial and inflammatory that [the defendant] was placed in a position of grave peril to which he should not have been subjected.'" *Pittman*, 885 N.E.2d at 1255 (quoting *Mickens v. State*, 742 N.E.2d 927, 929 (Ind. 2001)). The gravity of the peril is measured by the conduct's probable persuasive effect on the jury. *Id.* "The remedy of mistrial is 'extreme,' strong medicine that should be prescribed only when 'no other action can be expected

to remedy the situation' at the trial level." *Lucio v. State*, 907 N.E.2d 1008, 1010-11 (Ind. 2009) (citations omitted).

[46]  Hill identifies the offending statement, made by Miller, as follows: "Sergeant Rosenberg had looked under the passenger seat and spotted a piece of paper. When he pulled it out, he had noticed that it was a note from a person that apparently had been kidnapped and left a note in the back seat." Tr. Vol. IV p. 140.[11] Hill maintains that the grave peril resulted from the "great conflict in the evidence" and Miller's "highly prejudicial" testimony.[12] Appellant's Br. p. 29.

[47]  There is no dispute that the reference to the kidnapping violated the motion in limine. The question, however, is whether violation of that motion in limine warranted a mistrial. The trial court properly considered whether the mistrial— as an extreme option—was warranted versus a limiting instruction. The trial court concluded that "the error can be cured with a limiting instruction. . . ." Tr. Vol. IV p. 139. The trial court then instructed the jury:

> [T]he last comment by the witness was something that I'm going to ask you to strike and ignore and it should not come into any consideration. It's not part of this case as it's a matter that is

---

[11] Although the record does not include the evidence regarding a kidnapping charge, it appears that the statement stems from Hill giving T.W. a ride on the evening of the murder and driving with T.W. and her friend in the vehicle longer than T.W. intended. A kidnapping charge was not presented to the jury.

[12] Hill argues that the testimony was especially prejudicial in combination with T.W.'s testimony that: (1) she had the paper in her pocket because she did not have any other identification; (2) she wanted someone to be able to identify her body "if something were to happen" to her; and (3) she "made a conscious decision to put [the envelope] there[.]" Tr. Vol. V pp. 95, 97. Hill, however, did not move for a mistrial after T.W.'s testimony; therefore, we will only consider whether a mistrial was warranted at the time of Miller's statements—when Hill asked for the mistrial.

immaterial to what we're dealing with here. You are to not consider the last comment by the witness as you move forward with your discussions about this case."

*Id.* at 142.

[48] Hill has failed to demonstrate any prejudice other than his speculative and self-serving statement that the testimony likely impacted the jury's impression of Hill. *See cf Mote v. State,* 775 N.E.2d 687, 691 (Ind. Ct. App. 2002) (finding defendant demonstrated prejudice that likely impacted the jury's impression of his guilt or innocence from references to his past arrests and convictions that violated the motion in limine); *see also Underwood v. State,* 644 N.E.2d 108, 111 (Ind. 1994) (finding defendant failed to demonstrate prejudice that likely impacted the jury's impression of defendant's guilt or innocence from testimony that violated the motion in limine where the trial court admonished the jury and there was "overwhelming evidence" of defendant's guilt). There was substantial evidence outside of this testimony to convict Hill. Moreover, Hill did not later move for a mistrial during T.W.'s statement regarding the note. We presume the jury followed the limiting instruction. *See Harris v. State,* 824 N.E.2d 432, 440 (Ind. Ct. App. 2005) (holding "[w]e presume that the jury follows the trial court's instructions"), *trans. denied.* The trial court did not abuse its discretion by denying Hill's motion for mistrial.

## IV. *Opinion Evidence*

[49] Hill argues that a statement by one of the police officers constituted improper opinion testimony under Article 1, Section 19 of the Indiana Constitution and

Indiana Rules of Evidence 701 and 704.  Specifically, Hill alleges that the following statement is improper opinion testimony: "[Officers and the State] had substantial evidence on James Hill, a lot of evidence[]."  Tr. Vol. VI p. 148.

[50]     The State contends that Hill waived the issue by his failure to object.  Hill objected to the initial question asked by the prosecuting attorney.  During Solan's testimony, the following colloquy occurred:

> [THE STATE]: In your opinion, did you ever get in the 1980s the corroborating evidence that you wanted against all three of your suspects?
>
> [HILL'S COUNSEL]: Objection.  This opinion is irrelevant. The State has taken pains to point out that they and they alone – and by the State, I mean the prosecution decides to file charges. The detective's opinion is not relevant to these proceedings, and I add, I do not believe that the detective is competent to give such an opinion.
>
> [THE STATE]: Your Honor, I just elicited testimony from the detective, Captain Solan stated that in this case while it was the prosecutor's sole discretion to file or not file charges, that it was his decision whether or not to take the file to the prosecutor's office.
>
> THE COURT: Overruled.  Overruled.
>
> [HILL'S COUNSEL]: Thank you.
>
> [THE STATE]: So based off of your opinion as the supervising detective, did you ever get the evidence that you believed you

needed to corroborate all three suspects so that you would bring it down to the prosecutor's office?

A: We did not have enough evidence on Larry Mayes. We did not have enough evidence at the time on Pierre Catlett. We had substantial evidence on James Hill, a lot of evidence.

Tr. Vol. VI pp. 147-48. We will address Hill's argument on the merits. As noted above, we review the admission of evidence for an abuse of discretion.

[51]    In *Williams,* our Supreme Court stated:

Our evidence rules allow witnesses to testify to their opinion of the facts and circumstances if the opinion is '(a) rationally based on the witness's perception; and (b) helpful to a clear understanding of the witness's testimony or to a determination of a fact in issue.' Ind. Evidence Rule 701. Such an opinion is admissible even if 'it embraces an ultimate issue.' Evid. R. 704(a).

But Evidence Rule 704(b) draws a bright-line exception: "witnesses may not testify to opinions concerning . . . guilt[ [ or innocence in a criminal case.' Ind. Evidence Rule 704(b). The jury, not the witness, is responsible for deciding the ultimate issues in a trial, and opinion testimony concerning guilt 'invades the province of the jury in determining what weight to place on a witness' testimony.' . . . In other words, such testimony usurps the jury's 'right to determine the law and the facts,' Ind. Const. art. 1 § 19, and is therefore inadmissible.

Taken together, those principles establish that even in criminal cases, opinion testimony may include 'evidence that *leads* to an [incriminating] inference, even if no witness could state [an] opinion with respect to that inference.' . . . But an opinion must

> stop short of the question of guilt—because under Rule 704(b) and our constitution, that is one 'ultimate issue' that the jury alone must resolve.

*Williams v. State,* 43 N.E.3d 578, 581 (Ind. 2015) (internal citations omitted).

[52] As the State correctly notes, when reading the transcript as a whole, it appears that Solan's opinion "was not an opinion on [ ] [Hill's] guilt," but rather, the impediments to filing charges in 1980. Appellee's Br. p. 30. Moreover, Solan's statement that there was "substantial evidence" is not a statement regarding every element of the offense and "does not embrace the ultimate question of guilt, because the State still must prove the other elements in order for the jury to find guilt." *Id.* at 582. Here, the State had to establish the requisite elements of the charged offenses to prove Hill was guilty.

[53] Solan was not able to give an opinion as to the guilt or innocence of Hill or the others. The questions asked of Solan focused on the evidence available in the "1980s." Evidence required for prosecution is quite different from opinion evidence regarding guilt or innocence. The trial court did not abuse its discretion.[13]

## V. Cumulative Errors

[54] Hill argues that, when combined, the purported errors above warrant reversal.

---

[13] Based on this conclusion, we do not reach the State's alternative theory of invited error.

> [Our Supreme Court] has been willing to assume 'for the sake of argument, that under some circumstances the cumulative effect of trial errors may warrant reversal even if each might be deemed harmless in isolation,' but not where it has been 'clear in light of the evidence of guilt that no prejudice resulted from any of the erroneous rulings, individually or cumulatively.'

*Inman v. State,* 4 N.E.3d 190, 203 (Ind. 2014) (quoting *Hubbell v. State,* 754 N.E.2d 884, 895 (Ind. 2011)). Here, we do not find error, much less errors that resulted in prejudice. Accordingly, reversal is not warranted.

## VI.    *Sentencing*

Hill next argues that the trial court abused its discretion in sentencing him. Our Supreme Court has held that we must apply the sentencing scheme in effect at the time of the defendant's offense. *See Robertson v. State*, 871 N.E.2d 280, 286 (Ind. 2007) ("Although Robertson was sentenced after the amendments to Indiana's sentencing scheme, his offense occurred before the amendments were effective so the pre-*Blakely* sentencing scheme applies to Robertson's sentence.").

At the time of the offense, the presumptive sentencing scheme was in effect, not the current advisory sentencing scheme. Indiana's presumptive sentencing system, however, was found to "run[] afoul of the Sixth Amendment" pursuant to *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), "because it mandates both a fixed term and permits judicial discretion in finding aggravating or mitigating circumstances to deviate from the fixed term." *Smylie v. State*, 823 N.E.2d 679, 685 (Ind. 2005). Under *Blakely:*

> a trial court may not enhance a sentence based on additional facts, unless those facts are either (1) a prior conviction; (2) facts found by a jury beyond a reasonable doubt; (3) facts admitted by the defendant; or (4) facts found by the sentencing judge after the defendant has waived *Apprendi* [*v. New Jersey,* 530 U.S. 466, 490 (2000)] rights and consented to judicial fact[-]finding.

*Robertson v. State*, 871 N.E.2d 280, 286 (Ind. 2007). Hill argues that the aggravators found by the trial court violate his rights under *Blakely*.

[57] The trial court here found two aggravators:

> The character of the defendant at the time of the offense was dishonest and manipulative.

> The Court finds that given the nature of the offense and the character of the defendant, the sentence imposed is appropriate and proper. Any reduction or lessor sentence will depreciate the seriousness of [the] crime committed.

Appellant's App. Vol. III p. 165.[14] In its order on the motion to correct error, the trial court clarified that the character aggravator "derived from the

---

[14] Hill also argues that the trial court improperly considered the effect of the crime on the victim's family. We agree with the State that the trial court did not consider this factor as an aggravating factor. In its oral sentencing statement, the trial court merely remarked:

> Whether [Officer Pucalik is] a police officer or not, an individual died. An individual lost his life. An individual that was, from what I could tell, married at the time and certainly had a child as well that had to grow up without a father. And you, as a jury would find, were involved in all of this.

Sent Tr. p. 142. This statement, along with the other facts the trial court focused on, goes to the "totality of the nature and circumstances." *Id.* at 143. There is no indication that the trial court treated the effect of the crime on Officer Pucalik's family as an additional aggravating factor.

underlying facts of the case as presented to the jury." *Id.* at 180-81. The State argues that the character aggravator was based on other criminal incidents, which were not presented to the jury but were used to help identify Hill, and the fact that "the jury necessarily found that [Hill] possessed a stolen vehicle when he committed the present crime." Appellee's Br. pp. 36-37.

[58] The jury did not specifically find beyond a reasonable doubt that Hill possessed a stolen vehicle or participated in other uncharged crimes, and we conclude that this aggravator is similar to the use of a nature and circumstances aggravator. Our Supreme Court held that, "except when they are supported by facts otherwise properly found, and meant as concise descriptions of the moral or penal weight of those facts in assessing criminal culpability, aggravators such as 'the nature and circumstances of the crime' run afoul of the Sixth Amendment." *Mitchell v. State*, 844 N.E.2d 88, 91 (Ind. 2006); *Sowders v. State*, 829 N.E.2d 18, 19 (Ind. 2005) (holding that the following aggravators were improper under *Blakely*: "1) a substantial level of planning and aforethought; 2) failure to accept responsibility; 3) a lack of remorse; and 4) certain circumstances of the crimes"). Accordingly, we conclude that use of the character aggravator violated *Blakely*.

[59] The other aggravator—that any reduction or lessor sentence would depreciate the seriousness of the crime committed—similarly violated *Blakely*. In *Trusley v. State*, 829 N.E.2d 923, 927 (Ind. 2005), our Supreme Court held:

> There were three other aggravating circumstances found by the
> trial court: that Trusley was in need of incarceration; that the

*imposition of anything other than an enhanced sentence would depreciate the seriousness of the crime*; and the nature and circumstances of the crime. None of these can be supported by facts found according to the procedural dictates mandated by *Blakely*.

(emphasis added). As in *Trusley*, neither of the aggravators found here by the trial court conformed to the procedural dictates mandated by *Blakely*. Accordingly, we remand for resentencing in accordance with *Blakely*.[15]

## Conclusion

[60]   Admission of Williams' deposition did not violate Hill's constitutional rights. Nor did the trial court abuse its discretion: (1) in excluding Vanes' testimony and Hill's offer of proof; (2) in denying Hill's motion for mistrial; or (3) by allowing Solan's testimony. Hill's sentencing, however, did not comply with *Blakely*. We affirm Hill's conviction, but we reverse his sentence and remand for resentencing.

[61]   Affirmed in part, reversed in part, and remanded.

Brown, J., and Altice, J., concur.

---

[15] Because we remand for resentencing, we do not address Hill's argument that his sentence is inappropriate.